/21

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**DEBRA MAYFIELD GUILBEAUX,**

**Plaintiff,**

-vs-

**CITY OF DETROIT,** a Michigan
Municipal corporation, and **the Office of
MAYOR MIKE DUGGAN,**
jointly and severally.

**Defendants.**

Case:5:19-cv-13728
Judge: Levy, Judith E.
MJ: Patti, Anthony P.
Filed: 12-19-2019 At 02:56 PM
CMP DEBRA MAYFIELD GUILBEAUX V CITY
OF DETROIT, ET AL (LG)

---

**Debra F. Guilbeaux, In Pro Se
P.O. Box 34062
Detroit, MI 48234
Telephone 586 241 6108
debraguilbeaux903@yahoo.com
debraguilbeaux@gmail.com**

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff **Debra Mayfield Guilbeaux,** in **Pro Se**, files this Complaint, pursuant to

FRCP 15a(1)(A), and complains as follows:

1

### Jurisdiction and Parties

1. This is an action for violations of Plaintiff's civil rights under Title VII of the Civil Rights Act; 42 USC § 1981; 42 USC § 1983 and the Equal Protection Clause of the Fourteenth Amendments to the United States Constitution; as well as wrongful discharge in violation of public policy; violations of Michigan's Elliott-Larsen Civil Rights Act, retaliation, civil conspiracy and intentional infliction of emotional distress arising out of Plaintiff's employment relationship with the Defendants. In accordance with the Equal Opportunity Act 2010, which states in part: "it is the positive duty of all organizations, including government, business employers to take reasonable and proportionate measures to eliminate discrimination, harassment and victimization as much as possible and opines discrimination in employment is against the law."

2. Plaintiff **Debra Mayfield Guilbeaux** (hereafter "Plaintiff") resides within the Eastern District of Michigan.

3. Defendant **City of Detroit** (hereafter "**Defendant City**") is a Michigan municipal corporation located within the Eastern District of Michigan.

4. Based on information and belief, Defendant **June Adams**, an Individual, is the Deputy Corporation Counsel in the City of Detroit Law Department (hereafter "**Defendant Adams**") and resides within the Eastern District of Michigan.

5. Based on information and belief, Defendant **Patricia Luckett**, an Individual, is the Administrative Assistant and Supervisor over the Clerical Support Staff and various other supervisory capacities in the City of Detroit Law Department (hereafter "**Defendant Luckett**") and resides within the Eastern District of Michigan.

2

6. Based on information and belief, Defendant **Lawrence Garcia**, an Individual is the Corporation Counsel in the City of Detroit Law Department (hereafter "**Defendant Garcia**") and resides within the Eastern District of Michigan.

7. Based on information and belief, Defendant **Mayor Mike Duggan**, an Individual is the Head official of all of the City of Detroit's Departments and their Administrative agencies (hereafter "**Defendant Mayor**") and resides within the Eastern District of Michigan.

8. The events giving rise to this cause of action occurred in the Eastern District of Michigan.

### *Background Facts*

9. In or about July 21, 2003, Plaintiff was hired by the Defendant **City** during former Mayor John Johnson's administration.

10. Plaintiff's title was Legal Secretary. Plaintiff's beginning salary was $28,500 and Plaintiff's ending salary was approximately, $34,000.

11. Plaintiff states she categorically experienced unwarranted discrimination and undue harassment described herein within the first three to six months of her employment with Defendant City.

12. In or about June, 2004 Plaintiff was falsely accused and charged with "Improper use of the Law Department's office equipment". (See Exhibit 1)

13. Plaintiff's Union filed and lost her Grievance and Plaintiff was given a one (1) day suspension.  (See Exhibit 2)

14. In or about June, 2005, Plaintiff was falsely charged with "Poor Work Performance; i.e., "No Entry in Receptionist Desk Log".  (See Exhibit 3)

15. Plaintiff's Local Union 2799 filed a Grievance, including personal testimonies by four of Plaintiff's co-workers: Myria Ross, Pal Brooks, Darlene Flowers and Zechariah Gross highlighting their sworn personal Affidavits attesting to the fact that the charges against Plaintiff were "completely false, unfounded and manipulated", the Grievance failed and Plaintiff was given a three (3) day suspension.

16. In or about June 30, 2005, Plaintiff was laid off by Defendant **City** during a large scale Layoff of Defendant **City** employees.

17. In or about September, 2007, Plaintiff was recalled from Layoff and returned to employment with Defendant **City**.

18. In or about October, 2007, Plaintiff was transferred to the **Government Affairs Section** by Defendant **City** under the Supervision of Attorney Dennis Mazurek.

19. In or about the month of October, 2007, while in the Government Affairs Section, Plaintiff also worked with Attorney Ellen Ha, and in the course of her work relationship with Attorney Ha, Attorney Ha sent an email to her immediate Supervisor Dennis Mazurek, commending Plaintiff for her great work performance in the FOIA Section. (See Exhibit 4)

20. In or about November, 2007, Plaintiff was transferred from the Government Affairs Section to the **36th District Court Local Prosecution Section** of the City's Law Department, in the capacity as Legal Secretary to the six local prosecuting attorneys, including one Supervising Assistant Corporation Counsel, Stanley L. de Jongh.

21. In or about July, 2009, Human Resources personnel, Benita Cheatom and Renee Laster informed Plaintiff that her pay rate had not been equivalent to other Legal

Secretaries and that Defendant **City** owed Plaintiff retroactive backpay wages to bring her up to the same pay as all the other legal secretaries in the Law Department. (See Exhibit 5)

22. In or about May 18, 2010, Plaintiff's Attorney Supervisor, Stanley L. de Jongh, sent a letter of commendation, stating: "As her Supervisor from November 2007 through March 2009, Ms. Guilbeaux did an excellent job at the 36th District Court in the Local Prosecution Section that processed five thousand (5,000) cases a day at one of the busiest courts in the State of Michigan. Ms. Guilbeaux's work ethic and work product were above average. Ms. Guilbeaux was proficient at multi-tasking as the secretarial assistant to five (5) additional attorneys in the Local Prosecution Section. She performed her duties timely and efficiently. She has great skills, a great personality and would be a wonderful asset to any legal or professional environment. Ms. Guilbeaux also assisted me in effectively mentoring high school students who interned through the years at the City of Detroit Law Department by overseeing their performance while I was in court." (See Exhibit 6)

23. In or about May 20, 2010, Defendant **City** terminated, unjustly, and blatantly without clarity and substance, Plaintiff from her employment at the Local Prosecution Section. (See Exhibit 7)

24. After Plaintiff's May, 2010 termination, due to unforeseen reasons that were unbeknownst to Plaintiff, Plaintiff filed her own grievance without the direct input of her AFSCME Local Union 2799 union representative.

25. Subsequently, in or about August, 2011, Plaintiff won her Arbitration with all seniority and half of her backpay-wages and benefits by the Arbitrator, George T. Roumell

Chairman over an Arbitration Panel consisting of a total of six persons, three Company and three Union persons. (See Exhibit 8)

26. On the August 4, 2011 Arbitrator's ruling, Defendant **City** was ordered to reinstate Plaintiff's position and Plaintiff went back to the 36th District Court Local Prosecution Section of the City of Detroit Law Department as the sole Legal Secretary where she remained until June, 2014.

27. After returning to the Local Prosecution Section of Defendant City's Law Department the work atmosphere remained a hostile environment.

28. Plaintiff did not receive all the backpay, wages, seniority credits, vacation pay benefits due to her and Plaintiff proceeded to make several requests to Defendant **City's** Accounting and Finance personnel, Timothy Ngare, Renee Laster, Benita Cheatom and Marestella Layne, regarding same. To this date, Plaintiff has yet to receive the full aforestated backpay wages and seniority benefits due to her and only Ms. Laster to the best of Plaintiff's knowledge and belief, remains employed with Defendant **City**. (See Exhibit 9)

29. In or about June 30, 2014, Plaintiff transferred (at Plaintiff's request) to the Litigation Section of Defendant City's Law Department located on the Fifth Floor of the Coleman A. Young Municipal Center as a Litigation Secretary to three attorneys.

### COUNT ONE
### Violation of 42 U.S.C. § 1981 and § 1983
### Disparate Treatment and Hostile Work Environment

30. Plaintiff repeats and realleges paragraphs 1 through 29 as if set forth fully herein.

31. Based on information and belief, between 2014 and 2017, Plaintiff requested Local Union 2799 Representatives, Pal Brooks and Cherlyn Rupert, respectively,

6

to file a minimum of six grievances for discriminatory and disparate treatment—yet approximately only 3 or 4 grievances were actually filed while Plaintiff worked under the Secretarial supervision of Ms. Imani Kenyatte. (See Exhibit 10-11)

32. Based on information and belief between January, 2018 and February 2019, Plaintiff's requested L.U. 2799 representatives, Monique Stevens and Shirley Franklin to file at least five Grievances against Defendant City and direct secretarial supervisor and Senior Legal Renee Draper for disparate and discriminatory treatment in addition to false accusations as to Plaintiff's work product.  (See Exhibit 12)

33. From about June, 2015 until April, 2019, Plaintiff continued in the Law Department (and had requested a transfer out of the Law Department, no avail), in spite of the very hostile and polarized work environment, Plaintiff continued to give as best a satisfactory and above work product as possible and to be as professional as possible work relationship to Defendant City attorneys and support personnel until it became impossible to do so and in July, 2018, sought the help and counsel of her Therapist, Dr. Park.  (Exhibits 13)

34. In or about June and July, 2018, Defendant Adams again came over to Plaintiff's desk inquiring about what was in the boxes under Plaintiff's desk and "too much paper" and "too many copies" under Plaintiff's desk.  Defendant Adams again attempted to intimidate and humiliate Plaintiff within earshot and in front of her co-workers, who were nearby.

7

35.  Plaintiff informed Defendant Adams, by email, that these were the same documents that had been there earlier and that Plaintiff was complying with Defendant Adams' direction to not make more copies than necessary.

36. Plaintiff also responded to her immediate supervisor Defendant Kenyatte that having an extra copy saved Plaintiff from being reprimanded by her attorney on three separate occasions, as Plaintiff was found to be in the right.

37. In or about May 30, 2018, Plaintiff arrived at her work station to find her computer would not turn on.  Plaintiff requested the usual technical assistance from the IT Department, but for almost 3 days, no technical assistance arrived, which was highly unusual.

38. Plaintiff sent an email to her three attorneys, informing them that she had no computer and IT had not come to repair it for the past two and one half days.

39. In or about June 1, 2018, the IT technical assistant arrived and replaced Plaintiff's computer.

40. In or about June 5, 2018, Plaintiff's attorney, Patrick Cunningham informed Plaintiff's supervisor, Renee Draper that Plaintiff was late sending out a Deposition Notice.  Plaintiff's supervisor, Defendant Draper then sent an email and informed Management. (Exhibit 14)

41. In or about June 6, 2018, Plaintiff was called into a meeting by Defendant Adams and Defendant Luckett, with her Union reps, Stevens and Franklin, calling out Plaintiff's alleged "Poor Work Performance" informing Plaintiff that she should and must sign a "Performance Improvement Plan" for 26 weeks or be terminated from employment.  (Exhibit15)

42. Under the advice and counsel of Plaintiff's Union representatives, Stevens and Franklin, Plaintiff signed the Performance Improvement Plan ("PIP").. (Exhibit 16)

43. Based on information and belief, Defendant City failed to take action to stop the severe, pervasive retaliatory harassment directed at Plaintiff by her co-worker supervisors, Kenyatte and Draper and Plaintiff's attorneys, Philip Hiltner and Michael Auten

44. In or about August, 2018, after Plaintiff's consultation with therapist, Dr. Hollis Evans of the Center for Behavioral Studies located in Livonia, Michigan, who requested that Plaintiff take an Intermittent FMLA leave for "anxiety, stress, depression" approved by Defendant City's Human Resources Department. (Exhibit 17)

45. Plaintiff's Approved Intermittent FMLA allowed Plaintiff to use a maximum of 16 hours of any given week if Plaintiff felt overwhelmed or under stress while at work.

46. In or about September, 2018, Defendant Adams called Plaintiff into a meeting in Conference Room D to ask about why Plaintiff was still making so many copies of documents.

47. Based on information and belief between 2016 and or about February, 2019, while Plaintiff continued working in the Litigation Section, several older employees were being fired, coerced to retire or quit for suspicious reasons; i.e. Attorney Renita Johnson (approx. age. 58 or 59); Attorney David Demps (appox. age 64 or 65); Litigation Secretary, Susan Van Assche (approx. age 70 or 71); Litigation Secretary, Margaret Wilson (approx. age 69); Contract Employee,

9

Tyrone Butler (approx. age 72); Paralegal, Shemetria Springer, (approx. age 49); Attorney Tom Cippollone (approx. age 68 or 69). In addition, Legal Secretary, Wayne Maycock, age 77, told Plaintiff several times that he was being coerced and pressured to quit by Management, however, was later transferred to an area farther away from the front office to the FOIA Section of the Law Department in 2018. (Exhibit 18)

48. In or about August or September, 2018, Defendant Adams, and two times prior, came directly to Plaintiff's desk querying Plaintiff about the time she arrived at work on a particular afternoon when Plaintiff used one-half day of her approved FMLA leave.

49. Upon information and belief, Defendant Draper informed Plaintiff that she could no longer print out her work product and all her work product must be printed by Defendant Draper.

50. Plaintiff was repeatedly subjected to a polarizing and hostile work environment by the adverse employment action of Defendant City's Agent and Supervisory personnel for one, her age, for another retaliation for Plaintiff's reporting the mistreatment over the heads of Defendant City's Law Department Supervisors.

51. Defendant City's Agents and supervisory personnel's conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive and Plaintiff did find it hostile and abusive.

52. Plaintiff had first tried to find a remedy by grieving to Plaintiff's local union representatives. Then Plaintiff reported the Defendant City's agents and supervisory personnel's adverse actions to the Defendant City's Ombudsman,

Bruce Simpson, the Human Rights Department, Portia Roberson (Lisa Kent); the Human Resources Director, Denise Starr and lastly, the Mayor's Office (Councilman Scott Benson) and a Mayoral Assistants, Lisa Howze and Carol Davis (not sure of last name). (Exhibit 19)

53. Based upon information and belief, Defendant City's Agent and supervisory personnel knew or should have known about the hostile atmosphere.  Contrary to Defendant City's positive duty to protect and policies for civil rights, human rights, constitutional rights, there never was any remedial action taken by any of Defendant City's departments of agencies.  (See Exhibit 20)

54. Plaintiff filed EEOC charges for discrimination on at least three previous occasions:  2015; 2017, 2018 (twice) and the last one in 2019 (Exhibits 21)

55. The adverse actions and hostile environment at Defendant City's Litigation Section by Defendant City's agents and supervisory personnel, in 2018 and 2019, was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment which was abusive and continued up to Plaintiff's suspension and Defendant City's series of culminated in the second termination.

56. In or about February, 2019. Plaintiff was unexpectedly transferred by Defendant City to the Freedom of Information Action Section (FOIA) of the Law Department, and Ms. Andrea Hackett became Plaintiff's Secretarial Supervisor.

57. On March 15, 2019, Plaintiff used the FMLA leave and requested to leave the office 45 minutes earlier, which was approved by Plaintiff's supervisor, Andrea Hackett.

58. On Monday, March 18, 2019, Plaintiff was queried by email from 2nd in charge of the Law Department, Defendant Adams, what was the nature of her appointment on Friday, March 15, 2019. (Exhibit 22)

59. Plaintiff did not readily respond to the querying by Defendant Adams because Plaintiff was told by therapist, Dr. Hollis Evans and by Human Resource representative, LaQuita Adams, that the FMLA was administered by Law Department supervisors and all Plaintiff was required to do was inform Defendant City supervisors was that she was leaving on FMLA. (Exhibit 23)

60. Plaintiff had for the past eight months, followed the procedures outlined in the Approved FMLA form. (Exhibit 24)

61. Defendant Adams continued to email and question Plaintiff about the nature of her leaving 45 minutes early and what was Plaintiff's appointment.  Plaintiff after 4 or 5 emails, responded that she was advised by the LaQuita Evans in the Human Resources Department, her FMLA was not administered by Law Department personnel and Plaintiff did not have to discuss the details of it to Defendant City supervisors.

62. Plaintiff called her therapist, Dr. Evans, on March 18, 2019, but he was unavailable at the time.

63. Plaintiff continued for two weeks to be pressured by Defendant Adams to divulge her whereabouts on March 15, 2019.  Because Defendant Adams had taken special interest toward Plaintiff since Defendant Adams became the second in charge of the Defendant City's Law Department a year or so prior.

12

64. Defendant Adams had previously attempted to intimidate Plaintiff by coming directly to Plaintiff's desk and querying Plaintiff about the time she arrived at work on that particular day; which was in itself very unusual in that Plaintiff's immediate supervisor's desk was right next to Plaintiff, Defendant Renee Draper.

65. In or about April 29, 2019, at a Meeting of Defendant City Supervisors, Plaintiff was given a 30-day suspension, with recommendation for termination by Defendant Adams, Defendant Raimi and Defendant Luckett for reasons that implied Plaintiff had falsified the Approved FMLA she had taken. (See Exhibit 25)

66. Based on information and belief, Defendant City's Agents and Supervisors failed to stop or intervene in the constitutional violations.

67. Based on information and belief, Defendants Agents and/or Supervisors promulgated and/or participated in the adverse acts, official policies, orders and directives described herein—intentionally and deliberately and with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of Plaintiff.

68. Based on information and belief, Defendant City's Agents and supervisors named in this Complaint had knowledge of the conduct complained of and contributed to the adverse actions toward Plaintiff represented an overall official policy and was attributable to those agents and supervisors in the Law Department where Plaintiff and such individuals worked. (Exhibit 26)

69. Based on information and belief, it would have been plainly obvious to a reasonable policymaker that the conduct described here in this Complaint did deprive or would lead to deprivations of Plaintiff's constitutional rights.

13

70. Based upon information and belief, Defendant City's supervisory officials having final policymaking authority for each of the Defendant City entities named in this Complaint, nevertheless, agreed to, approved, and ratified the unconstitutional conduct alleged.

71. Based upon information and belief the policymaking authorities are: the Human Resource Department; the Mayor's Office, in their official capacity, having final policymaking authority, failed to reprimand or stop any of the adverse actions purported to by Plaintiff. This failure to reprimand or stop the unconstitutional acts against Plaintiff, led directly to the constitutional deprivations alleged. Plaintiff sustained injuries and damages, including but not limited to loss of earnings, loss of seniority and pension credits and benefits, loss of career opportunities, defamation and loss of professional reputation, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

72. Based on information and belief, Plaintiff had at all times during her employment with the Defendant **City**, believed that her work performance was satisfactory or better, until the certain events, precipitated and contrived by Defendant **City** in the April 22, 2019 letter from Valarie Colbert Osumede. (Exhibit 27)

73. Plaintiff has always had goodwill and a pleasant disposition toward Defendant City's Supervisory personnel and with all her co-workers at all times. (Exhibit 28)

74. Plaintiff never had a bad disposition toward any of her Supervisors and coworkers during the entire duration of her employment with Defendant **City**.

14

75. Plaintiff never sought to retaliate any ill-will or any unkind or any harsh words or anything close to that toward any individual with whom she worked with; which Plaintiff can attest and corroborate by co-worker witnesses to that fact.

76. The particular event, causing Plaintiff's termination in a Notice of Termination dated May 28, 2019

## COUNT TWO
### Violation of 42 U.S.C. § 1981 and § 1983
### And Elliott-Larsen Civil Rights Act – Retaliation

77.     Plaintiff repeats and realleges paragraphs 1 through 76 as if set forth fully herein.

78.     Plaintiff is and always has been well qualified, experienced Legal Secretary.

79.     Plaintiff was subjected to an adverse employment action because of her age; conditions and/or benefits of employment.

80.     Plaintiff's age was one factor that made a difference in Defendants' adverse employment actions, including, but not limited to, her prior termination and the manipulated and constructive discharge.

81.     Throughout the course of her employment, Plaintiff was harassed by agents, representatives and employees of Defendants and forced to work in a polarized and hostile environment.

82.     The adverse actions, comments and treatment Plaintiff was subjected to were aimed to intimidate Plaintiff to retire.

83.     The hostile environment was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive work environment.

15

84.     Defendants' conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive, and Plaintiff did find it hostile and abusive.

85.     Plaintiff complained repeatedly to higher authorities to no avail.  First Plaintiff complained to her Local Union 2799 representatives.  A few Grievances (4 or 5) were filed, several were not. Plaintiff complained and filed charges of discrimination to the Michigan Civil Rights Department location of Defendant City's law department, where Plaintiff also worked.  Plaintiff complained to the Ombudsman's Office on several occasions.  Plaintiff complained to the Human Rights Department and lastly, to the Defendant Mayor's Office. (Exhibit 30)

86.     Plaintiff complained to authorities for over 10 years and the Defendants failed to take any remedial action or call any type of mediation meeting in response to Plaintiff's complaints.  All of Plaintiff's actions and attempts were ignored.

87.     Defendants retaliated against Plaintiff for engaging in protected activity; namely in grieving all the injustices and violation of her constitutional right to protest and objecting to all the unlawful and discrimination and harassment.

88.     Defendants Adam, Luckett, Raimi and Garcia took adverse action against Plaintiff by repeated suspensions (unpaid), cutting her pay, which was retaliatory and harassment.

89.     Defendants Adam, Luckett, Raimi and Garcia knew and participated in creating the hostile environment in Plaintiff's work location.

90. Defendants Adam, Luckett, Raimi and Garcia failed to take remedial action or stop the severe, pervasive, retaliatory harassment directed at Plaintiffs by Supervisors Kenyatte and Draper and her Attorneys Hiltner, Auten and Cunningham.

91. Defendants and supervisors failed to reprimand or stop and intervene in the constitutional violations.

92. Defendants promulgated and/or carried out the acts, official policies, orders and directives described above intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of Plaintiff.

93. The acts of the individual Defendants alleged in this Complaint represent the overall official policy left unchecked and attributable to the Defendant entities for which such individuals worked.

94. The acts complained of were under color of state law and untaken in concert among the named Defendants.

95. Supervisory officials having final policymaking authority for each of the Defendant entities named in this Complaint had knowledge of the conduct complained of.

96. It would have been plainly obvious to a reasonable policymaker that the conduct described did deprive or would lead to deprivations of Plaintiff's constitutional rights.

97. Upon information and belief, supervisor officials having final policymaking authority for each of the Defendant entities named in this Complaint nevertheless agreed to, approved, and ratified the unconstitutional conduct alleged.

98. The Defendant City's entities; i.e., the Mayor's Office, Human Resources Department; i.e., Denise Starr; the Human Rights Department Director, the Ombudsman's Office by and through their supervisory officials having final policymaking

17

authority, further failed to reprimand or stop the actions purported by the individually named Defendants. This failure to reprimand or stop the actions led directly to the constitutional deprivations alleged.

## COUNT THREE
## Violation of 42 U.S.C. § 1983
## Equal Protection

99. Plaintiff repeats and realleges paragraphs 1 through 98 as if set forth fully herein.

100. Plaintiff had a right to fair and equal treatment under the law, as guaranteed y the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

101. Defendant City and its Agents and supervisory personnel violated this right when they intentionally singled out and treated Plaintiff less favorably than other similarly situated persons based on one first her age and then protected constitutional rights to complaint. Defendants failed to reprimand or stop to intervene in constitutional violations.

102. Defendant City and its Agents promulgated and/or carried out the acts, official policies, orders and directives described above, intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of Plaintiff.

103. The acts of individual Defendants alleged in this Complaint represent official policy and custom over fifteen years and are attributable to the Defendant entities for which such individuals worked.

104. The acts complained of were under color of state law and undertaken in concert among the named Defendants.

18

105.   Defendant City's supervisory officials having final policymaking authority for each of the Defendant entities named in this Complaint had knowledge of the conduct complained of as well as participated in it.

106.   It would have been plainly obvious to a reasonable policymaker that the conduct described did deprive or would lead to deprivations of Plaintiff's constitutional rights.

107.   Upon information and belief, supervisory officials having final policymaking authority for each of the Defendant entities named in this Complaint, nevertheless agreed to, approved, participated in and ratified the unconstitutional conduct alleged.

108.   The Defendant City's entities, by and through their supervisory and official capacities, as well as having final policymaking authority, further failed to reprimand or stop the individually named Defendants.  This failure to reprimand or stop the unwarranted actions led directly to the constitutional deprivations alleged adding to Plaintiff's mental anguish and emotional distress where Plaintiff subsequently cracked under the threat of losing her employment.

109.   Defendant City's entities also failed to intervene in a custom of their employees violating individuals' constitutional rights.  This failure to stop the unconstitutional behavior, led directly to the constitutional deprivations alleged.

110.   As a direct and foreseeable consequence of Defendant City's Agent's and Supervisory personnel's acts, policy decisions, failure to reprimand, and/or failure to intervene when a custom of constitutional violations was occurring, Plaintiff sustained injuries and damages including but not limited to:  loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension credits/benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional

reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT FOUR
### Wrongful Discharge in Violation of Public Policy and In Violation of Applicable Law Statutes

111. Plaintiff repeals and realleges paragraphs 1 through 110 set forth above with the same force and effect as though set forth in full herein.

112. During her employment with Defendants, Plaintiff refused to violate or acquiesce in violations of law, internally objected to illegal practices, sought remedy from Defendant City's prescribed Agents and attempted to comply with laws and regulations.

113. In particular, Plaintiff refused to retaliate by arguing in insubordination to all the injustices, when, for instance, Defendants Kenyatte and Draper added work burdens; i.e., inability to print out work product; having to submit to daily micromanaging by supervisors, and incidents where Plaintiff's work product was sabotaged or tampered with, etc.

114. Plaintiff's compliance with Defendant City's Agents and supervisory personnel's treatment was rewarded with suspensions and the 2nd termination that was carried out, in part, in retaliation for Plaintiff's repeated filing of charges to Defendant City's in house agencies for her internal objections to illegal practices, and for her attempts to comply with laws and regulations.

115. Plaintiff's termination violates clearly established public policy of the State of Michigan that an employer may not discharge an employee where the alleged reason for the discharge of the employee is for misconduct that did not **"evince such willful or wanton disregard of an employer's interest as is found in deliberate violations or**

20

**disregard of standards of behavior which the employer has the right to expect of**

**his employee...”**

116. "Misconduct" is not defined in the statute, but Courts have defined the term. In

*Carter v Michigan Employment Security Commission*, 364 Mich 538 (1961), the

Supreme Court adopted the definition of misconduct in *Boynton Cab Company v*

*Neubeck*, 296 NW 636, 640 (Wis 1941) which states as follows:

> **The term 'misconduct'...is limited to conduct evincing such willful or**
> **wanton disregard of an employer's interests as is found in deliberate**
> **violations or disregard of standards of behavior which the employer**
> **has the right to expect of his employee, or in carelessness or negligence**
> **of such degree or recurrence as to manifest equal culpability, wrongful**
> **intent or evil design, or to show an intentional and substantial disregard**
> **of the employer's interest or of the employee's duties and obligations to**
> **his employer. On the other hand, mere inefficiency, unsatisfactory**
> **conduct, failure in good performance as the result of inability or incapacity,**
> **inadvertencies or ordinary negligence in isolated instances, or good-faith**
> **errors in judgment or discretion (underline added) are not to be deemed**
> **'misconduct' within the meaning of the statute. Carter, supra, at 541**

117. The actions of Defendants, it agents, representatives and employees, were

intentional and willful, and in deliberate disregard of and with reckless indifference to the

rights and sensibilities of Plaintiff.

118. As a direct and proximate result of those actions, the terms, conditions and

privileges of Plaintiff's employment were adversely affected and Plaintiff was repeatedly

intimidated by Defendant Adams, a higher level supervisor in the Law Department, with

repeated verbal inquisitions meant to evince mental and emotional distress, Plaintiff

blurted out to Defendant Adam she had a dentist appointment when in truth, Plaintiff did

not.

119. Plaintiff lied to Defendant Adams only in that moment because Plaintiff felt

Defendant Adams actions caused Plaintiff to think she could be fired that day, when in

actually, she did not have to tell Defendant Adams her whereabouts under the terms of the Approved FMLA and according to her therapist, Dr. Evans.

120.    In plain words, Defendants and their supervisors could repeatedly go out of the bounds of their official and supervisory capacities and violate Plaintiff's constitutional rights, but when Plaintiff went out of the boundaries on one occasion and lied in a moment of repeated intimidation by Defendant Adams, she lost her job.  One would surmise that the rules and regulations are to be followed by all, yet Defendant City's agents and supervisory personnel's violations by all accounts and results seemed to be untouchable and quite above the law.  The Court shall judge--as this ought not to be the case in this instant or any others.  No one should be above the law.

121.    As a further direct and proximate result of Defendant City's Agents and Supervisory personnel's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to:  loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension credits and benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT FIVE
### Title VII, Elliott-Larsen Civil Rights Act – Age Discrimination

122.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 121 above.

123.    At all relevant times, Plaintiff was an employee and Defendant City her employer, within the meaning of the Elliott-Larsen Civil Rights Act of Michigan ("ELCRA") MCLA § 37.2201, *et seq.*

22

124. At all relevant times, Plaintiff was an employee and Defendants were an employer within the meanings set forth in the Elliott-Larsen Civil Rights Act of Michigan, ("ELCRA") MCLA § 37.2201, *et seq.*

125. The ELCRA prohibits retaliation against any person "because the person has opposed a violation of this act or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCLA § 37.2701.

126. The ELCRA also provides that a person shall not "[a]id, abet, incite, compel, or coerce a person to engage in a violation of this act" or attempt, directly or indirectly to commit an act prohibited by this act." MCLA § 37.2701.

127. Based on information and belief, Plaintiff already knew Defendant City wanted to get rid of her which was evident for the past 15 years. They had tried and had not succeeded up to 2019.

128. In December, 2018, Plaintiff was given an email by Laquita Evans, Human Resources representative, that when the Christmas break occurred, Plaintiff would be put on medical layoff.

129. When Plaintiff responded to the email and asked why and also that Plaintiff would contact the Department of Labor to inform them of this information, Defendant City's agent, Laquita Evans, recanted the layoff and told Plaintiff to disregard it.

130. Defendant City and agents treated other Law Department support staff and employees more favorably than Plaintiff by their actions and disparate treatment of Plaintiff in the terms, conditions and/or benefits of employment, based on her age and also on their retaliation for Plaintiff's reporting them to higher authorities.

131.    Plaintiff engaged in activity protected by the Act when she complained of and opposed unlawful discrimination repeatedly and the overt harassment by Defendant City's Agents and, particularly, Defendant Adams.

132.    Defendant Adams retaliated against Plaintiff by constructively discharging her in retaliation for Plaintiff's protected activity.

133.    Defendant Adams' actions were plain for all to see that she was on a mission to get rid of Plaintiff as Plaintiff intends to demonstrate to the court by sworn witness testimony.

134.    Plaintiff was informed by a co-worker that Defendant City's Agents and supervisory personnel said "all who they can't or don't intend to promote, they were going to get rid of".

135.     A causal link exists between Plaintiff's protected activity and Defendant Adams' retaliation.

136.    The actions of Defendant City's agents, representatives and supervisory employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

137.    As  further direct and proximate result of Defendant City's, Agents and supervisory personnel's wrongful acts, Plaintiff has sustained injuries and damages for over 15 years, including but not limited to:  loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension credits and benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

138. As Plaintiff's employer, Defendant City and its Agents and Supervisor personnel had a duty to refrain from discriminating against Plaintiff for any reason and in particular, her age. MCLA §37.2202.

139. Plaintiff says her age played a major factor because Defendant City Agents and Supervisor personnel began to purge the Department of several employees who were the age of 60 or better by intimidating and finding undue fault with their work product that was unfounded and had not happened in the recent past. These persons all had 20 years or more seniority and Plaintiff's had far less due to all the false suspensions and false terminations (excluding Mr. Butler).

140. Based on information and belief, Plaintiff's co-workers, i.e., persons like Plaintiff and/or attorneys and support staff; i.e., Margaret Wilson, age 69; Joanne Robinson, age 62; Attorney David Demps, age 65; Attorney Tom Cippolone, age 66; Attorney Renita Johnson, age 59; Contract employee, Tyrone Butler, age 71 to name a few.

141. Throughout the course of her employment, Plaintiff was harassed by Defendant City's agents, representative and employees and forced to work in a polarized and hostile work environment.

142. Defendants knew or should have known about the polarized and hostile atmosphere.

143. Plaintiff's age was one factor that made a difference in the adverse employment actions taken by Defendants.

145. As a further direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension credits and

25

benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT SEVEN
### Civil Conspiracy

146. Plaintiff repeats and realleges paragraphs 1 through 145 as if set forth fully herein.

147. Defendant City and its agents and supervisory personnel, illegally, maliciously, and wrongfully conspired with one another with the intent to and for the purpose of unlawfully terminating Plaintiff's employment.

148. Defendant City's Agents and its supervisory personnel, in combination, conspired to unlawfully terminate Plaintiff's employment.

149. This conspiracy resulted in the illegal, unlawful and tortious activity of unlawfully terminating Plaintiff's employment.

150. As a further direct and proximate result of Defendant City and its Agents and Supervisory personnel's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

26

## COUNT EIGHT
### Intentional Infliction of Emotional Distress

151. Plaintiff repeats and realleges paragraphs 1 through 150 as if set forth fully herein.

152. Defendant City's and its Agents and Supervisory personnel's conduct as outlined above was intentional and with wanton disregard to Plaintiff's feelings or the detrimental effect on Plaintiff's life.

153. Defendant City's Agents and Supervisory personnel's conduct as outlined above was extreme, outrageous, and beyond all possible bounds of decency and of such character as to be intolerable in a civilized society.

154. Defendant City's Agents, Supervisory personnel's conduct was not for any proper purpose other than to cause Plaintiff severe and serious emotional distress.

155. Defendant City's Agents, Supervisor personnel conduct in this matter, which proximately caused Plaintiff's injuries and damages, was grossly negligent because it was so determined and consistent over a lengthy period of time that it demonstrated a substantial lack of concern for Plaintiff's physical and emotional well-being.

156. As a further direct and proximate result of Defendant City's Agents and Supervisory personnel's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

27

# PRAYER FOR RELIEF

Plaintiff prays this Honorable Court will see that Plaintiff always had goodwill toward Defendant City and never intentionally worked against Defendant City. For the reasons stated under threat of perjury, Plaintiff, **Debra Mayfield Guilbeaux** seeks judgment against Defendant City's agents and supervisory personnel in their official capacities as follows:

I. **RELIEF**

    a. Plaintiff's injuries sustained by the hands of Defendant City, began in 2004 and culminated in the second unjust termination dated May 28, 2019 (See Exhibit ). Plaintiff did not, at any time, ever have the desire, nor did she deliberately cause Defendant City's agents or supervisory personnel or any individual, any intentional harm; but quite to the contrary, Plaintiff always sought and endeavored to do her best in producing a satisfactory or better work product and did exhibit a professional and cordial attitude toward everyone. Plaintiff made this fact clear to Defendant City's agents and supervisory personnel or Plaintiff's heart in the matter, in writing, on a few occasions. (See Exhibit )

    b. Defendant City's agents and supervisory personnel's adverse and unconstitutional violations against Plaintiff for more than ten plus years caused Plaintiff emotional stress, embarrassment, loss of wages, overtime, pension credits and benefits; loss of professional reputation and the loss of the ordinary pleasures of everyday life.

c. Plaintiff won her first arbitration against Defendant City because it was a quite defamatory, blatantly wanton charge that Defendant City knew or should have known was baseless, by the mere fact that Defendant City's agents and supervisory personnel are mostly all experienced, knowledgeable attorneys. Yet, Defendant City persisted in violating Plaintiff's protected civil rights by causing Plaintiff to continue to have to work each day in an often polarizing and hostile work environment wherein Plaintiff's coworkers, more often than not, shunned her.

## A. Legal Relief:

1. Compensatory damages in whatever amount she is found to be entitled:

2. Exemplary damages in whatever amount she is found to be entitled:

3. A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled; and,

4. An award of interest, costs and reasonable past due backpay, wages and pension credits and benefits lost.

5. An award of a full pension with all the benefits Plaintiff's pension would be previously to the two false terminations Plaintiff unjustly endured in May 2010 and May 2019.

## B. Equitable Relief:

1. An order out of this Court placing Plaintiff in the same position she would have been had there been no wrongdoing by Defendants;

2. An injunction out of this Court prohibiting any further acts of discrimination or retaliation;

3. An award of interest, costs and reasonable past due back pay (2004-2019) fees; and

4.  Whatever other equitable relief appears appropriate at the time of final judgment.

Respectfully submitted,

**DEBRA MAYFIELD GUILBEAUX**
s/ *Debra F. Guilbeaux*
In Pro Se
P.O. Box 34062
Detroit, MI  48234
(586) 265-3081
Debraguilbeaux903@yahoo.com

Dated:  December 19, 2019

## JURY DEMAND

Plaintiff **Debra Mayfield Guilbeaux**, in Pro Se, demands a trial by

jury of all issues in this cause.

30

# EXHIBIT 1

AUG-20-2010 13:52 FROM-C OF D RR DEPT +224 3710 T-305 P.012 F-135



# MEMORANDUM

City of Detroit Law Department

Ext. 23117

**To:** Debra Sullbeaux
Legal Secretary
Law Department

**From:** Deloise Craig
Sr. Legal Secretary

**Date:** June 21, 2004

**Subject:** Written Reprimand - Failure to Limit Your Use of Office Machines and Materials to Business-Related Matters Only

On June 10, 2004, I sent my team an "FYI" e-mail reminding you all of the *DIRECTIVE FOR THE USE OF THE CITY OF DETROIT'S ELECTRONIC COMMUNICATIONS (Email) SYSTEM.* (Copy of the e-mail is attached.)

On June 18, 2004, there was an e-mail that had been printed from your computer entitled "We Won", dealing with the Pistons win, which was 38 pages in length (page 1 of said e-mail is attached). There were employees waiting at the printer to get their jobs, but you had the printer tied up. When I approached you with the document, which was given to me by an employee waiting for their print job, you were at your desk cutting and taping pictures of the e-mail — leaving me to believe that you had already printed it once and the copy I presented to you was a second print. Earlier on that same day, a supervising attorney retrieved from the printer a seven-page e-mail you had printed seven times - totaling 49 sheets of paper (1st page attached). This behavior is unacceptable.

You are being issued this written reprimand for the following reasons:

1. Improper use of the Department's equipment (computer & printer); and
2. Waste of Department's resources (paper [76 sheets], toner and tape).

Failure to limit your use of office machines and materials to business-related matters only, can lead to further corrective discipline up to and including suspension.

Deloise Craig
Sr. Legal Secretary

cc: Union
Supervisor
Human Resources

K:\DOCS\LIT\CRAIDAA\2000\RJTWritten\Rep.wpd

# EXHIBIT 2

(8/20/2010) Karen Douglas - Admin@law.ci.detroit.mi.us_20100820_105427.pdf

R... 56-7617

## City of Detroit
### Notice of Suspension

Date Issued: 07/02/2004                     Seniority Date: 07/21/2003

Department: Law                             Division: Litigation

Employee Name: Debra Guilbeaux             SSN 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

Classified Title: Legal Secretary

You are hereby notified that you have been suspended from City of Detroit employment for a period of ___ (5.) CALENDAR DAYS/ ONE (1) WORK DAY for the following reason(s): Violation of published departmental policy regarding printing e-mail, and misue of department resources and equipment. Specifically, on July 1, 2004, you printed multiple copies, totalling approximately 250 pages, of an e-mail bulletin originating with O/EDS - Human Resources concerning schedule of classes. This misuse of time and supplies delayed the legitimate work of others by dominating a shared printer and by unnecessarily wasting paper. You have been admonished earlier in this regard, yet you persist in conducting yourself in a manner which cannot be tolerated.

The first day of your suspension period is effective on 07/08/2004. You are to report back to work on your regular shift on 07/09/2004 unless otherwise notified to report on any other date.

Check One     ☐ Your suspension is with a recommendation for DISCHARGE/PROBATIONARY
                  SEPARATION

              ☒ Your suspension is not with a recommendation for DISCHARGE

Date Notice Served on Employee: 7/2/2004 By:

☒ Personal Service ☐ Certified Mail ☐ Other
    Specify one

SUSPENSION ISSUED BY: Deloise Craig.         TITLE: Sr. Legal Secretary
REVIEWED BY: [signature]                      TITLE: Attorney II
HR Representative:                            TITLE: _____ Date Reviewed:

Human Resources must be notified the next business day when a suspension is issued.

                                             Records Specialist
                                             Labor Assoc. Rep.
CC:     Supervisor
        Employee Services Specialist (at Employee Services)

(K:\DOCS\LITCRAID\A320 XXRPT\Debra1day Suspension.doc) Notice of SuspensionCity of Detroit copyright. All rights reserved
Effective 12/02/02                           pg. 3                                    Rev 7



# EXHIBIT 3

TO:      Monique Stevens and DeAngelo Malcolm

FROM:    Debra Guilbeaux

RE:      Notices of Suspension and Corresponding Grievances, etc.

DATE:    June 17, 2019


Dear Monique and DeAngelo:  Today, I went through my personnel file and searched for copies of Suspension Notices and Grievances that were either filed or not filed as a result of the suspension or disciplinary action. Some are older, but the point of listing them is to show whether they were ever resolved and/or also the very toxic nature of my relationship with City supervisory personnel over 15 year period.

| YEAR | REASON FOR SUSPENSION | DAYS OFF | GRIEVANCE/OUTCOME |
|------|----------------------|----------|-------------------|
| 2004 | "Violation of published departmental policy regarding Printing e-mail and misuse of dept. resources & equipment" | One (1) | Denied |
| 2005 | "Poor Work Performance" No entry in receptionist desk log" | Three (3) | Denied |

I had 3 signed affidavits from employees: Myria Ross; Pal Brooks and Darlene Flowers and Zechariah Gross that this series of accusations was completely false and manipulated by Supervisory personnel.  These people can be contacted now for veracity of charge.

| | | | |
|------|----------------------|----------|-------------------|
| 05/24/10 | "Weapon in the Workplace" | 29 Days | Denied |
| 6/2010 | "Possession of a weapon in the workplace— | Discharge 264 work days | Won in Arb |

- Suspension resulted in Discharge
- Guilbeaux Discharge went to Arbitration:
- Grievance won Arbitration in August 2011

| | | | |
|------|----------------------|----------|-------------------|
| 06/09/15 | "Away from Office without Authorization" | Three (3) | Denied |

City's supervisors would not respond to my or Steward's (Pal Brooks) request for time off and would not give an Alternative person to contact as a Proxy. Management denied Myria Ross access to my timesheets. If Imani Kenyatte was out of office when I requested time—no one would approve or my Requests were ignored. When we met for hearing; Neither Pat Luckett or C. Raimi would Indicate who the alternative supervisor/proxy supervisor was in Workbrain.

From my records – No Grievance was filed (even though I requested it) If it was—I don't Know what disposition was other than it was not resolved to my **satisfaction.**

| | | | |
|------|----------------------|----------|-------------------|
| 10/03/16 | "Absent Without Leave" | 10-Days | Denied |

Same set of circumstances of previous charge where Supervisor Imani Kenyatte would not be in the Office or in this case as the other, allowed my requested to be timed out and would not approve it. Meeting was held with supervisors, yet, they (Luckett, Raimi, Kenyatte) continued to evade issue of Proxy person—even though I put the request in the Workbrain system timely and accurately.

From my records – No Grievance was filed (even though I requested it).   If a Grievance was filed, I did ot get notification of its outcome.                                                                    Denied

)

01/16/18     Poor Work Performance                                  10 Days              Denied

Grievance was filed, Disposition not known as of (6/17/19) by me (DFG)

05/3018     The City's supervisors wrote me up for Poor Work Performance at the time when for an unexplicable reason, my computer was shut down for 2 and ½ days and it did not become up and running until the 3rd day of June 1, 2018.  Then on June 6, 2018, I was given an oral and written warning by Supevisor, Renee Draper, for Poor Work Performance and not meeting deadlines—even though I had to "catch up" due to computer issues—which I sent an email to each of my attorneys to indicate the entire sequence of events and circumstances.

No Grievance was filed and yet I was subsequently given and made to agree (with coercion by Patricia Luckett and June Adams) to the Performance Improvement Plan or be discharged at meeting on June 26, 2018.

10/18/18     "Dereliction of Duty"                                   Three (3)           Denied
)
         False accusations and manipulative actions by supervisors/attorneys (DFG)

         If Grievance was filed – Disposition not known as of (6/17/19) by me (DFG)

04/30/2019   "Misrepresentation and/or falsification of time records       29 days       Pending
                  Grievance filed – and pending (DFG)

5/30/2019    Notice of Discharge                                                         Pending
             Grievance filed – and pending (DFG)

Please note that I have copies of all of these Notices of Suspension and the corroborating information as well as a copy of the Grievance, if it was filed and if I received a copy.

I will be sending you a copy of this in the Regular and Certified Mail for your records.

Please respond in writing to my information, preferably, by setting up a meeting to discuss the pending grievances and how the previous grievances were handled by Michigan Council 25 and Local Union 2799.


Respectfully submitted,

/s/ Debra Guilbeaux


Debra Guilbeaux



**From:**      Ellen HA
**To:**        Guilbeaux, Debra
**Date:**      10/19/2007 4:08 PM
**Subject:**   Re: Thank you

Thanks Debra!!!!!!!!!!!!!!

>>> Debra Guilbeaux 10/19/2007 3:56 PM >>>
Ellen:(Pat): Perhaps I just do not comprehend that what is so 'great' to you was my effort to do a good job because I am very thankful to be working permanently again. You all do not realize that I had no idea I would be called back to the City. As a matter of fact, it was not on my agenda--I thought after I had my surgery--I would get out and start looking at law firms, etc. Little did I know my prayers were directed this way. You are very welcome and thank you for the appreciation.

>>> Ellen HA 10/19/2007 3:46 PM >>>
Debra:

I recently gave you an assignment to close out approximately 200 plus files on Legal Edge. The list was in very fine print and the list was loooooooooooong.

You worked very patiently, while working on other pressing matters for the section (opening new files and closing out old files), over the last couple of days.

This email is to acknowledge that you have single handedly closed out over 200, if not more, files on legal edge that should have closed out many months ago, long before you arrived to the FOI Section.

THANK YOU for your hard work and patience!!!!



# EXHIBIT 6

**From:**      Stanley De Jongh
**To:**        Kathy Brown
**Date:**      2/11/2009 1:12 PM
**Subject:**   Reference Letter for Outstanding Work by Debra Guilbeaux

**CC:**        Debra Guilbeaux

February 11, 2009

Dear Ms. Brown:

Ms. Debra Guilbeaux has been doing an outstanding job at the Local Prosecution Section, 36th District Court and Dept. of Administrative Hearings while having to manage numerous challenges in a very fast paced environment.

Ms. Guilbeaux, without the assistance of any clerk or legal assistant, has been instrumental in managing the OWI (Drunk Driving Cases) that have to be copied on a daily basis.  The Drunk Driving Cases can be anywhere from 25 - 50 cases per week.  In the past, the County Prosecutor would have their attorneys copy the files when they prosecuted the cases.

The Staff Prosecutors at the 36th District Court are very fortunate that Ms. Guilbeaux has been performing this copying task in addition to the other professional responsibilities.

Ms. Guilbeaux answers the phones and courteously greets the high volume of visitors who come to the office looking for assistance.  Ms. Guilbeaux maintains the reports for the Supervising Assistant Corporation Counsel that encompasses: DAH Appeals, General Civil Assignments and Special Assignments.  The assistance has proven invaluable in keeping track of the multitude of cases at the Court.

I have personally observed Ms. Guilbeaux being patient, professional and responsive under stressful circumstances, and she did it all with a smile.

Thank you for assigning Ms. Guilbeaux to the Local Prosecution Section and it has been a pleasure to work with her these past few years.

Stanley L. de Jongh, Esq.
Supervising Assistant Corporation Counsel
City of Detroit Corporation Counsel's Office
1650 First National Building
Detroit, MI  48226
(313) 237-5031  (o)
(313) 224-5505  (fax)
jongsl@law.ci.detroit.mi.us



CITY OF DETROIT
LAW DEPARTMENT

FIRST NATIONAL BUILDING
660 WOODWARD AVENUE, SUITE 1650
DETROIT, MICHIGAN 48226-3535
PHONE 313•224•4550 TTY:311
FAX 313•224•5505
WWW.DETROITMI.GOV

To Whom It May Concern:                                May 18, 2010

Re:     Debra Guilbeaux, Legal Secretary Position Recommendation

Dear Sir/Madam:

Please accept this letter as a recommendation and reference for Debra Guilbeaux, a Legal Secretary with the City of Detroit Law Department. As her Supervisor from November 2007 through March, 2009, Ms. Guilbeaux did an excellent job at the 36th District Court in the Local Prosecution Section that processed five thousand (5000) cases a day at one of the busiest courts in the State of Michigan. Ms. Guilbeaux worked with me on criminal prosecutions, civil infractions and enforcement of real property violations.

Ms. Guilbeaux's work ethic and work product were above average. Ms. Guilbeaux was proficient at multi-tasking as the secretarial assistant to five (5) additional attorneys in the Local Prosecution Section. She performed her duties timely and efficiently. She has great skills, a great personality and would be a wonderful asset to any legal environment or professional environment. Ms. Guilbeaux also assisted me in effectively mentoring high school students who interned through the years at the City of Detroit Law Department by overseeing their performance while I was in court.

Should you need any further information relative to Debra Guilbeaux and her tenure with the Law Department, please feel free to contact me at (313) 237-5031.

Very truly yours,

Stanley L. de Jongh, Esq.
Supervising Assistant Corporation Counsel
City of Detroit Law Department
660 Woodward
Suite 1650
Detroit, MI 48226
(313) 237-5031

# EXHIBIT 7

## City of Detroit
## Notice of Discharge Form

RECEIVED
2010 JUL 18 PM 10: 57
HRD
ADMINISTRATION

| | |
|---|---|
| Date: June 29, 2010 | |
| Department: Law | Division: Local Prosecution |
| Employee Full Name: Debra Guilbeaux | Job Title: Legal Secretary |
| Social Security No. (last four digits only): 7617 | Oracle ID No. 27719 |

You are hereby notified that you have been discharged from City of Detroit employment effective July 5, 2010.

For the following reason(s): Possession of a Weapon in the Workplace. Violation of Human Resources Department Work Rules.

Discharge Issued by: _Kyptal A. Crittendon_ Title: _CORPORATION COUNSEL_
(Department Head)

Lump Sum Payout of employee's Vacation Time Bank is:  Approved ☑  Not Approved ☐

| Notice Served on Employee (date) 6-30-10 | By (check one) ☐ Personal Service ☑ Certified Mail |
|---|---|

**RIGHT TO PROTEST** If you are in a union or association, you may consult with your appropriate representation. If you are a non-union represented employee, you may submit a written appeal within 10 days of the effective date of discharge in accordance with the Human Resources Department Grievance Procedure.

Notice of Discharge
Effective 06/11/10

City of Detroit, copyright. All rights reserved.
pg. 1

FORM 9048
Rev 4

# EXHIBIT 8

RECEIVED

CITY OF DETROIT - MICHIGAN AFSCME COUNCIL 25
LABOR ARBITRATION PANEL

JUL 13 2011

CITY OF DETROIT
LABOR RELATIONS DIVISION

*In the Matter of:*

CITY OF DETROIT

and

MICHIGAN AFSCME COUNCIL 25
and its Local 2799

Case No. 15151
Gr. No. LAW 01-10
Debra Guilbeaux
Law Department

---

## BEFORE GEORGE T. ROUMELL, JR., CHAIRMAN

City Panel Members:

Reginald T. Jenkins, Labor Relations Manager
Cheryl A. Campbell, 2nd Deputy Fire Commissioner
Andrew Anyanwu, Director, Building Safety Engineer &
Environment

Union Panel Members:

Phyllis McMillon, President, AFSCME Local 542
Roger Rice, President, AFSCME Local 229
Eric Lowe, Sr., Grievance Committee Member
    Local 312

## OPINION

APPEARANCES:

FOR THE CITY OF DETROIT:

LaVerne Wilson, Labor Relations Specialist

FOR MICHIGAN AFSCME COUNCIL 25:

Catherine Phillips, Staff Specialist
Yvonne Ross, President, Local 2799

Debra Guilbeaux was employed by the City of Detroit Law Department as a legal

secretary on July 21, 2003. At the time, she was assigned to the main office of the Law

Department.

Beginning in November 2007, Ms. Guilbeaux was assigned to the satellite office of the

Law Department located at the 36ᵗʰ District Court. The Panel is led to believe that there are six attorneys assigned to the satellite office, a supervisor and one secretary, Debra Guilbeaux. At some point, Ms. Guilbeaux was spending half of her time at the satellite office and half of her time at the main office of the Law Department.

Ms. Guilbeaux was issued a 29 work day suspension pending discharge, effective May 24, 2010, for "Possession of a weapon in the workplace Human Resources Department Work Rules." This suspension was converted to a discharge. Ms. Guilbeaux caused a grievance to be filed on her behalf challenging the discharge, wherein as to the statement of fact it is noted:

> On May 24, 2010 Ms. Debra Guilbeaux was issued a 29 day suspension with recommendation for discharge. It is the contention of the grievant and the union that Ms. Guilbeaux did not have a "weapon", that she did have a knife in her work bag, which she had used as a kitchen utensil. Ms. Guilbeaux did not bring the kitchen knife to work on 5/24/10, it was brought on an earlier day the week before to use in the cutting of peel from an apple she brought to work for lunch. Employees with whom the grievant worked knew that she had the knife the week before, and for what purpose she used it. Not until 5/24/10, when the grievant made a complaint concerning a personal recommendation letter that was missing from her locked overhead cabinet, did the presence of the knife become an issue. Grievant did not deny she had the knife in her work bag, (it was not in her purse), nor were there any threats made by grievant.

Shannon Walker is a Senior Assistant Corporation Counsel assigned to the satellite office where she has a cubicle. Attorney Walker explained the facts from the Department's viewpoint that led to Ms. Guilbeaux' discharge in the following memo dated May 25, 2010:

From: **Shannon Walker**
To:    Luckett, Patricia
Date:  5/25/2010 12:43 PM
Subject: Incident with Debra Guilbeaux

On either May 17 or 18, 2010 Paula Cole was looking for a cake knife in the office. Ms. Guilbeaux was in the office when Ms. Cole asked her if she had the"knife"-meaning cake knife-Ms. Guilbeax responded "how did you know I had a knife-this is the first day I brought it". I along

RECEIVE

JUL 19 ...

CITY OF DETROIT
LABOR RELATIONS DIV...

2

JUL 19 2...

CITY OF DETROIT
LABOR RELATIONS DIVISION

with Zachary Anderson heard that statement.

On May 24, 2010 I entered the 36th District Court office at approx. 8:45 a.m., the door was unlocked but Ms. Guilbeaux was not in the office. I went to my cubicle and began working. Ms. Guilbeaux entered the office about 5 minutes later. At that time she began singing Christian based songs, then she began chanting and "praying". She began to say "... on day 31 I will put them on slabs, all the devils, satans and serpents that have crossed me will know me, they will be on slabs and they will know I did it, all who have crossed me ... " then she started to say "... no day 35, I will do it on day 35 ... " she continued with these statements for a minute or two. Then she began singing again. After a minute or so she began "praying" to God to "break the bones of those who have crossed me ... to break their legs until I can do what I need to do on day 35".... Needless to say I was scared. I waited until a defense attorney entered the office looking for a city attorney. Ms. Guilbeaux still did not realize I was in my cubicle as she told her no one was here. When I then indicated I was here and walked to the front, Ms. Guilbeaux looked surprised and stated to me " .. .I was just praying ... ". I was fearful of what Ms. Guilbeaux may do once she learned I had heard her statements indicating harm to others. As I was unsure if she had a knife I left the office with the defense attorney. I used my cell phone and called Paula Cole. I then went to the Detroit Police Departments Court liaison office next door and spoke with Sgt Nelson. After I explained to her the statements made and the potential knife situation, they decided to check it out. She, along with Lt Anderson and Sgt Tucker come into the office to see if Debra had a knife and if she appeared to be a danger. According to Sgt Nelson, when asked if she had a knife, Ms. Guilbeaux opened her purse and retrieved it and gave it to Sgt. Nelson. A picture of that knife was forwarded to Edward Keelean.

Should you have any questions or concerns, feel free to let me know.

Succinctly put, Ms. Walker told the Panel that there was some tension between her and Ms. Guilbeaux; that Ms. Guilbeaux in the past had referred to Ms. Walker as a "devil"; that the song that Ms. Guilbeaux was singing referred to devils and referred to doing harm to devils; that knowing that Ms. Guilbeaux had brought a knife which turned out to be a five inch paring knife to work, she became alarmed, causing her to contact building security and eventually submitting a report with the Detroit Police Department with the reporting officer in his narrative writing:

A: NONE DEBRA GUILEEAUX B/F/LATE 40'S 5'6" HEAVY BUILD. LEGAL SECRETARY FOR CITY OF DETROIT LAW

3

RECEIVED

JUL 19 201

CITY OF DETROIT
LABOR RELATIONS DIVISION

DEPARTMENT.

S: WALK IN HQ DESK

C: LAW DEPARTMENT EMPLOYEE SHANNON WALKER W/F 8/5/69 CAME INTO STATION TO REPORT AN ALTERCATION WHICH OCCURRED TODAYS DATE. SHE STATES THAT SHE WAS AT HER DESK IN THE OFFICE THAT SHE SHARES WITH MS GUILLEAUX. MS WALKER HEARD MS GUILLEAUX COME INTO THE OFFICE THIS MORNING AND HEARD HER SINGING CHRISTIAN SONGS. MS GUILLEAUX THEN BEGAN CHANTING "ON DAY 31 THEY WILL ALL END UP ON SLABS. ALL THE DEVILS, SERPENTS, AND SATANS THAT HAVE CROSSED ME. THEY WILL KNOW I DID IT, NO WAIT I'LL DO IT ON DAY 35." MS WALKER STATES THAT MS GUILLEAUX CONTINUED RANTING ABOUT BODIES ON SLABS. MS WALKER'S CUBICLE IS HIDDEN, SO M5 GUILLEAUX DID NOT KNOW SHE WAS THERE. MS GUILLEAUX BEGAN SIGNING AGAIN AND CHANTING TO GOD TO "BREAK PEOPLES BONES" UNTIL SHE COULD GET TO THEM.

MS WALKER WENT TO THE COURT LIAISON OFFICE AND T/T SGT NELSON AND LT ANDERSON WHO WENT OVER TO THE LAW DEPT OFFICE TO TALK TO MS GUILLEAUX. SGT NELSON WAS ABLE TO CONFISCATE A 5 INCH PARING KNIFE.

MS WALKER WAS ADVISED TO MAKE A REPORT.

Ms. Walker reported the matter by phone to Edward Keelean, Deputy Corporation Counsel. Mr. Keelean advised the Panel that there were consultations with Human Resources that eventually led to the decision to suspend and terminate for the reasons set forth above.

In a letter dated July 26, 2010 to Yvonne Ross, President of Local 2799, Krystal A. Crittendon, Corporation Counsel, explained the reason for the discharge as follows:

Ms. Guilbeaux was discharged on the following grounds:

- that she violated the City's workplace violence policy in bringing a weapon (i.e., knife) into work and making threats against her coworkers;

- that she violated the City's policy in creating a hostile work environment (i.e., making offensive comments relating to race of coworkers);

4

JUL 19 :::

CITY OF DETROIT
LABOR RELATIONS DIVISI:

- that she violated the Court's Administrative Order prohibiting weapons in the Courthouse (i.e., sneaking a knife onto the premises).

There is no question that the rules of the Human Resources Department do list as a dischargeable offense:

*Weapons*
Employees must not have illegal weapons (firearms, knives, and explosives) in their possession on City property or time.

As noted, the satellite office was in the building housing the 36th District Court. Entrance to the Courtrooms and offices requires passing through scanning devices. Indeed, the Panel did express concern as to how Ms. Guilbeaux was able to bring a five inch paring knife into the office through the scanning devices. Her explanation was that she was familiar with the guards and suggesting that because of this familiarization the guards were lax when it came to her.

Debra Guilbeaux prepared the following memorandum giving her version of the events:

WHO:  Debra Mayfield Guilbeaux, Legal Secretary, City of Detroit Law Department

WHAT:  Workplace Incident and Charge of possession of weapon

WHEN:  Monday, May 24, 2010

WHERE:  City of Detroit Law Department- Local Prosecution Section 36th District Court

On Thursday, May 20, 2010 I brought a knife to work along with 2 apples that I planned to use to peel off the peelings of the apples. On that day an attorney asked Paula Cole did anyone have a knife. Paula Cole replied out loud that Debra has a knife. I asked Paula, how did she know I had a knife? She did not respond in a clear manner. Paula responded that she thought I had a plastic knife of some sort. She said this before I had even cut my apples or pulled the knife out. She was not in the office when I did cut my apples. In my mind I thought she responded incoherently unconvincingly to my question. However, since she is the supervisor I did not pursue the

5

JUL 19 ...

CITY ... ...
LABOR ... ...

issue. I shrugged it off as I knew I had the knife for cutting my apples. I also have a sharp letter opener in my drawer, along with sharp scissors which I use almost every day. I think I also had a fingernail file. The knife was in my red leather duffle bag.

I arrived at work about 8:20 a.m. on Monday, May 24, 2010. What was on my mind was my red leather duffle bag because on Friday I had left it locked in my overhead compartment at my desk at the 36th District Court. I believed person or persons were going into my personal belongings because things kept coming up missing-- either from under my desk, or my drawers and/or from the coat area. I've been making an effort not to bring too many bags into my office- except lately-because my car was down and the fact the City had me going back and forth from the 36th District Court to the First National Building 3 days a week --was causing me to keep shifting and modifying my mode of operation on Mondays, Wednesdays and Fridays.

*[Please Note: The environment has also been quite hostile for a long time. I have wanted a transfer. I have sought to move and I have voiced and written my concerns about the environment to my superiors several times to no avail. Lately, though, there had been a relative calm in the past few weeks. Meaning that the last office upheaval came during the Christmas Holiday when there was a major blow up with my supervisors regarding use of my leave time and also regarding our office' interpersonal relations].*

This issue on Monday, May 24, 2010 occurred when I came in at 8:25 a.m. and opened up my locked overhead compartment and found that some to my personal items were missing from my duffle bag and from the folder also locked in my overhead compartment. <u>Immediately, I was angry and disgusted that once again by the intrusion by someone with a key into my personal belongings. I sat down, thinking I was alone, and started praying and talking out loud about how sick I was of the individuals that keep messing with me my stuff and harassing me.</u> I started praying out loud (<u>thinking I was alone as I did not hear or see anyone in the office)</u> and I starting saying things like: I rebuke you devil and the Lord rebuke you devil and other prayer words that I pray telling the devil he was not going to win, etc. The door of the office then opened and someone walked in (thus, I stopped praying) and I said: "None of the prosecutors are here right now, they'll probably be in shortly." Right after I said that, Shannon Walker, one of the prosecutors, said out loud: "I'm here – I can help you." PLEASE NOTE: She and I have not had any kind of a positive relationship since I came to the department in Nov. 2007. Not because I didn't try to but because I believe from her actions she has a penchant to start or bring up negative issues and problems within the office-this

6

JUL 19

CITY
LABOR

is my informed and firm belief. After Shannon Walker said I'm here – I knew then she heard me while I was praying. I had thought I was alone only because I had ... explain to Shannon at all. When I went to the bathroom briefly and came right out – I didn't look in each cubicle prior to praying, when in the past, I have done so. It was the only the stress and anger of that moment having my belongings violated again and again that caused me to react like I did.

On Monday, May 24, 2010, after the office phones were quieter, I went to speak to the Wackenhut Security next door – about my compartment being opened and my personal items taken from my bag. I also told my supervisor, Paula Cole, what I perceived was an invasion of my belongings an the opening of my compartment from over my desk. She kept asking me ... was missing. I told her I would write it down when I wrote my report. [Also please note that I received a phone call from Vanita at about 8:35 a.m. stating that I had a check in her office that I could pick up.] Vanita Harvin is secretary to Krystal Crittendon in the Head Office and it was curious to have a check given to me that I didn't know what it for. I saw Krystal Crittendon on Saturday at the funeral of the little 7 year old that was shot by a Detroit Police Officer in error. There was a lot of emotion at that funeral. I am sure it is significant that my head supervisor, Krystal Crittendon and I both were there.

This check, I believe represents someone planning to lay me off-but not in a positive way. The reason I believe that is because I made a statement in a meeting over a week ago about my not going to be bothered as much as they think I would if they fired me. I said that in stress because **I knew I was being garnisheed by the IRS and I didn't think I would have a paycheck anyway. That was the only reason I said that.** I tried to explain it to Lou Hatty, my steward, when the meeting we were in concluded with Pat Luckett and Gwendolyn Huston.

I want to say that at no time did I have any thought or consciousness to hurt or confront anyone in my office at any time or at any place. In my attempt to remedy my problem and seek relief-I was and am being accused of causing or thinking of causing someone harm--I don't know who--some bodily harm. I don't know who they say I was trying to or intended to harm-I have not been told that yet.

The fact is: I WAS TRYING TO GET A REMEDY FOR THE CONTINUED HARASSMENT OF ME WHEN I COME TO WORK BY PERSON AND/OR PERSONS WHO WORK IN MY DEPARTMENT. THIS IS WHAT I AFFIRM AND DECLARE UNDER THREAT OF PERJURY or ANY RETALIATION.

7

JUL 15 2011

CITY OF DETROIT
LABOR RELATIONS DIVISIC

I have only sought to work in an atmosphere of peace and calm. I have sought to be kind, courteous and cooperative. The City of Detroit Law Department person(s) knows this. I would ask each and every person I have worked with at any time to be questioned about how I have treated them. How have I spoken to them I would like each one of the individuals at the City of Detroit Law Department to be asked have any of them ever heard me curse at any time or any place? Have they ever heard me raise my voice? Have they ever heard me confront anyone in a violent manner? These are the questions that should be asked. Make sure to ask whether I have ever threatened anyone in light of the constant issues happening to me and which I've brought to them over and over about all my personal belongings taken and/or by the personal attacks on my character and my reputation and my work product.

At this point, I am very tired of having to respond to accusations that I deem totally false relative to my reputation and character--which I submit to any listener as always kind and considerate of others .... in spite of any lapse of good judgment. Which I, wholeheartedly, concur and admit to that this was surely the case in the incident of Monday, May 24, 2010.

Further, affiant sayeth not.
Respectfully and truthfully as well as sincerely,
Debra Mayfield Guilbeaux

This has been a most complex and troublesome case. Under the Arbitration Panel System, the Panel votes on the disposition of a grievance with the Chairman, in the event there is a tie, breaking the tie. The Chairman, in any event, prepares the Opinion and Award reflecting the vote of the Panel.

The Chairman does so in this case, although the Chairman expressed to the Panel serious reservations. These reservations come about because of the Chairman's long years of practice at the Bar and knowledge of the important role that a secretary plays in the delivery of legal services. The secretary is part of a legal team with the attorneys being the leaders in directing the activities of the secretary.

In the view of this Chairman, and only his view, after reading Ms. Guilbeaux' explanation, the Chairman was concerned that Ms. Guilbeaux has failed to understand her

8

function in the environment of a law office. The Chairman wonders why Ms. Guilbeaux, who was the sole secretary in a busy law office, upon whom the attorneys in that office, including Ms. Walker, rely on, believed it was a hostile environment and wonders why Ms. Guilbeaux was referring to the lawyers she worked with as "devils". This is troublesome to the Chairman.

The Chairman expressed these concerns to the Panel. Yet, the Panel was concerned over the grounds for the discharge, namely, bringing the knife into the workplace and the fact that the evidence indicates that supervisor Paula Cole knew of the presence of the knife at least one or two days prior to the events involved here and yet took no steps to correct the situation. It was this failure that caused the Panel members to conclude that the Department could not under the just cause standard support a discharge, even though recognizing the prohibition of bringing a knife into the workplace and concern as to how the knife was able to infiltrate the screening device.

Nevertheless, the Panel believed that Debra Guilbeaux should be disciplined for violating the anti-knife rule. The Panel also considered the singing, noting that Ms. Guilbeaux was singing religious songs in a room that she thought no one was present. She did not see Ms. Walker who was in a cubicle away from Ms. Guilbeaux. The singing was before the office opened. Ms. Guilbeaux did apparently explain when Ms. Walker announced her presence that she did not realize that Ms. Walker was present. To the Panel, this did not sound as if Ms. Guilbeaux was making a threat within the meaning of Executive Order No. 12, even though one could understand Ms. Walker's reaction.

In considering all of the factors, the Panel noted that Ms. Guilbeaux has been off work for approximately 14 months. The Panel was of the view that a 14 month suspension could not be

9

RECE

JUL 19

CITY OF DET
LABOR RELAT

justified under these circumstances.  Therefore, the Panel concluded that the appropriate suspension would have been half of the time that Ms. Guilbeaux has been off work.  Thus, the Panel directed the Chairman to prepare an Award on this basis.

The Panel was apparently also concerned, as was this Chairman, that Ms. Guilbeaux is in need of counseling via the Employee Assistance Program as evidenced by her explanation letter quoted in this Opinion.  Therefore, the Award, as directed by the Panel, would reinstate Ms. Guilbeaux immediately, but that within 30 days of her reinstatement she should have made an appointment with the EAP to arrange counseling and shall follow the course of counseling recommended by EAP.  Furthermore, subject to the contractual rights of other employees, the Department may, at its sole discretion, transfer Ms. Guilbeaux from the satellite office.

The Award that follows reflects the above decisions and directions of the Panel as just described.

## AWARD

1.    Debra Guilbeaux' discharge is hereby set aside.  She shall be reinstated with full seniority and shall receive back pay for half of the time that she has been off, less monies she has earned from other sources for any time that she worked during the last half of her time she was off.  The time that she is not being reimbursed for will be considered a disciplinary suspension.

2.    Debra Guilbeaux shall within thirty (30) days of her reinstatement make an appointment with the Employee Assistance Program for the purposes of obtaining counseling and she shall be obliged, as part of this Award, to follow the course of counseling recommended by EAP; that if she fails to make the appointment and/or fails to follow the course of counseling

10

RECEIVED

JUL 1 3 2011

CITY OF DETROIT
LABOR RELATIONS DIVISION

recommended by the Employee Assistance Program, the Department may exercise its right to discipline, subject to the right of Ms. Guilbeaux to grieve.

3. The Department, in its sole discretion, subject to the contract rights of other employees, may transfer Debra Guilbeaux from the 36th District Court satellite office.

GEORGE T. ROUMELL, JR.
Chairman

July 19, 2011

RECEIVED

JUL 19

CITY OF
LABOR RELATIONS

11



EXHIBIT 10



# City of Detroit



RECEIVED
JUN 24 2015
HUMAN RIGHTS DEPT

## Human Rights Department
### Executive Order # 2014-2

HRS2-2015-6

## Discrimination & Harassment Complaint Form

City of Detroit Employees Only

Try (313) 224-4558

| | |
|---|---|
| **Claimant's Name (Your Name):** Debra F. Guilbeaux | **Respondent's Name:** Patricia Luckett |
| **Claimant's Complete Address:** 19666 Caldwell | **Respondent's Department & Division:** Law Dept |
| **Department & Division:** Law Dept. Litigation Div | **Respondent's Classification:** Admin Specialist II |
| **Classification:** Legal Secretary | **Telephone:** 237-0721 (?) |
| **Telephone:** (313) 237-0797 | **Respondent's Supervisor:** Chuck Raimi |
| **Supervisor Name & Telephone:** Imani Kenyatte, Senior Legal | **Supervisor's Telephone:** 237- |

Have you filed a complaint involving the same transaction or occurrence with any other city, state, federal civil rights agency, department or commission? (please circle): Yes (Date Filed?) Jan 2011 No

What is the name of the agency? (please circle): ☐ MDCR ☒ EEOC ☒ Other — Proof of Claim, 2357
What was the final outcome of this complaint? : United States Bankruptcy Court

## Executive Order No. 2014-2 Complaint (Discrimination & Harassment Policy)

Please check the factor(s) which you believe are the reasons for the DISCRIMINATION:

| | | | | |
|---|---|---|---|---|
| Race | ☐ | Age ☒ | ☒ Disability | ☐ |
| Sex | ☐ | National Origin ☐ | Religious Beliefs | ☒ |
| Color | ☐ | Sexual Orientation ☐ | Marital Status | ☐ |
| | | | Gender Identification/Expression | ☐ |

Please check the factor which you believe are the reasons for HARASSMENT:

Sex ☐ It pertains to my age and my religion because I say things others don't like.

**First date of incident:** _____ **Last Date of Incident:** _____

Describe the action(s) that you think was discriminatory or harassing (please be specific).

When I make comments or have shown my faith outwardly, it has caused others (in my department) to shun me, ostracize me and make comments, such as "No one wants to work with you." is Krysia ___ Lon said to me once I ___ moving to work ___ being moved. Then, once I came over to the ___ Section I started to get ___ host___ ___ treatment where attorneys would not give me work — even though I was assigned to them →

# EXHIBIT 11

AFSCME LOCAL __2799__

STEP __3__

# AFSCME

American Federation of State, County and Municipal Employees

# OFFICIAL GRIEVANCE FORM

NAME OF EMPLOYEE __DEBRA GUILBEAUX__          DEPARTMENT __LAW__

CLASSIFICATION __LEGAL SECRETARY__

WORK LOCATION __2 Woodward - Suite 500__  IMMEDIATE SUPERVISOR __ANDREA HACKETT__

TITLE __Grievance: Violation -Articles 1: Sections C; Article 3: Section C, #6, #9, #11 (Pages 4 and 5)__

## STATEMENT OF GRIEVANCE:

List applicable violation: __UNJUST DISCHARGE - In violation of Master Agreement of 2014-2018 Between City of Detroit and Michigan Council 25 AFSCME, AFL-CIO  PLEASE see Agreement, Page 5 ("Discipline and discharge employee for Just Cause;__

__It is my contention that I was NOT discharged for Just Cause--but in Retaliation for various reasons to be brought to light in a grievance meeting or other remedies that will be afforded to me in the process my appealing this unlawful and unjust termination of my employment.  Signed:  Debra Guilbeaux on June 11, 2010__

Adjustment required: __To be made completely whole in seniority/pension, backpay wages lost, all job-related banks restored and additional monies determined for pain and suffering in all aspects since the first grievance was filed upon my transferring to the Litigation Section of the City's Law Department.__

I authorize the A.F.S.C.M.E. Local __2799__ as my representative to act for me in the disposition of this grievance

Date __June 11, 2019__          Signature of Employee __/s/ Debra Guilbeaux__ _Debra Guilbeaux_

Signature of Union Representative _____ Title _____

Date Presented to Management Representative __Patricia Luckett or June Adams or__ _____

Signature _____ Title _____

Disposition of Grievance: _____

**THIS STATEMENT OF GRIEVANCE IS TO BE MADE OUT IN TRIPLICATE. ALL THREE ARE TO BE SIGNED BY THE EMPLOYEE AND/OR THE AFSCME REPRESENTATIVE HANDLING THE CASE.**

ORIGINAL TO __City Law Department --__

COPY __Stacy Joy__

COPY: LOCAL UNION GRIEVANCE FILE

**NOTE: ONE COPY OF THIS GRIEVANCE AND ITS DISPOSITION TO BE KEPT IN GRIEVANCE FILE OF LOCAL UNION.**



# GRIEVANCE FACT SHEET

This form is to be used by the steward to aid in investigating a grievance. The FACT SHEET outlines the information that will be necessary to develop a strong case. Use additional pages to document all the details.
**DO NOT TURN THIS FORM INTO MANAGEMENT. THIS INFORMATION IS FOR THE UNION'S USE ONLY.**

GRIEVANT_____DEBRA GUILBEAUX_____ DEPARTMENT_____LAW_____

CLASSIFICATION___LEGAL SECRETARY___ DATE OF HIRE___JULY 21, 2003___

DATE OF CLASSIFICATION___October 2015___ WORK LOCATION___5th Floor - Coleman A. Young Bldg.___

**What Happened?** Also describe incidents which gave rise to the grievance.
This Discharge was unjust because at the time of the infraction I was on an approved FMLA; I was queried by June Adams about why I left about 45 minutes early on March 15, 2019. I followed the usual procedure for leaving early. I informed my immediate supervisor and I informed my former supervisor, Renee Draper the following work day, which was Monday, March 18, 2019. I had been under persecution by supervisory personnel for over a year; I complained to no avail. I grieved past incidents with my Union representatives; I felt pressure on many occasions and informed Renee Draper and Union reps. I went to 2 or 3 therapists for remedy. My blood pressure rose and I was prescribed medicine.

**Who was involved?** Give names and titles (include witnesses)___Andrea Hackett, Renee Draper, June Adams, Patricia Luckett, Chuck Raimi and others who were my supervisors, attorneys or department heads.

**When did it occur?** Give day, time, date(s)___It has been over a one year period--it mostly started after 2014 and got worse in 2017-2018 and culminated when June Adams became a Chief (with a mission).

**Where did it occur?** Specific locations___Litigation Section of the Law Department

**Why is this a grievance?** What is management violating: contract, rules and regulations, unfair treatment, existing policy, past practice, local, state, federal laws, etc. Violation of past practice, unfair anddisparate treatment Article 1, Sections C, D; Article 2, Section C: #9; Article 8, Section A of Master Agreement 2014-2018 between City of Detroit an Michigan Council 25 and AFSCME

**What adjustment is required?** What must management do to correct the problem?
Make Debra Guilbeaux completely whole in all categories that she has grieved from the 1st grievance.

**Additional comments.** Use reverse side if needed_____

GRIEVANT'S SIGNATURE___Debra Guilbeaux___ DATE___June 11, 2019   6-12-19___

STEWARD___Stacy Joy___ DATE_____

GRIEVANT'S HOME ADDRESS___19666 Caldwell, Detroit, MI  48234___

**NOTE: A COPY OF THIS FORM TO BE COMPLETED BY STEWARD OR OFFICER FILING GRIEVANCE AND TO BE TURNED IN TO LOCAL GRIEVANCE FILE ALONG WITH COPY OF GRIEVANCE AND DISPOSITION.**

THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES

F 29A



# EXHIBIT 12



AFSCME LOCAL _2744_
STEP _2_

# OFFICIAL GRIEVANCE FORM

NAME OF EMPLOYEE _Debra Guilbeaut_    DEPARTMENT _Law_

CLASSIFICATION _Legal Secretary_

WORK LOCATION _Litigation_    IMMEDIATE SUPERVISOR _Imani Kenyatte_

TITLE _Sr. Legal Secretary_

## STATEMENT OF GRIEVANCE:

List applicable violation: _Disparate Treatment: Debra Guilbeaux_
_Claim that she was treated differently than other_
_employees, that her comp-time was denied for_
_this reason._

Adjustment required: _That Debra Guilbeaux be made whole to know_
_who she need to get permission from in case of emergency_
_and the appropriate timeline in which to do so._

I authorize the A.F.S.C.M.E. Local _2744_ as my representative to act for me in the disposition of this grievance

Date _10/10/16_    Signature of Employee _____

Signature of Union Representative _Tracy Joy_    Title _Union Steward_

Date Presented to Management Representative _____

Signature _Monique Adkins_    Title _President_

Disposition of Grievance: _That Debra be made whole._

_____

THIS STATEMENT OF GRIEVANCE IS TO BE MADE OUT IN TRIPLICATE. ALL THREE ARE TO BE SIGNED BY THE EMPLOYEE AND/OR THE AFSCME REPRESENTATIVE HANDLING THE CASE.

ORIGINAL TO _____

COPY _____

COPY: LOCAL UNION GRIEVANCE FILE

NOTE: ONE COPY OF THIS GRIEVANCE AND ITS DISPOSITION TO BE KEPT IN GRIEVANCE FILE OF LOCAL UNION.



# EXHIBIT 13



## Apex Behavioral Health Western Wayne, P.L.L.C.

1547 S. Wayne Rd.
Westland, MI 48186
(734) 729-3133
(734) 729-3130 fax

PUTTING THINGS IN MOTION

8 - 20 - 2018
Date

Debra Guilbeaux
Patient Name

To Whom It May Concern:

This is to certify that the above named person has been under my professional care and

that he/she has been incapacitated since ___8 - 20 - 2018___. He/She may

resume his/her regular work duties as of ___9 - 24 - 18___. His/Her

diagnosis is ___F 32 2___ Major Depression.

Sincerely,

Tae W. Park, M.D.

# EXHIBIT 14

## MEMORANDUM

TO:        Renee Draper
                 Sr. Legal Secretary, Litigation Division

FROM:    Debra Guilbeaux, Legal Secretary

DATE:      September 7, 2018

RE:         Follow-Up Meeting on Friday, August 24, 2018

Cc:         June Adams
                 Pat Luckett

Renee,

       Pertaining to your Memorandum of August 29, 2018, my response is as follows to each of your comments to me:

1. Your first paragraph states that our last meeting of the Performance Improvement Plan was "Friday, August 2, 2018"—when it actually was Friday, August 24, 2018, from what we know and discussed. For the record, our first meeting was July 27, 2018 from what you indicated to me.

2. Under the heading "Missed Deadlines" I am in disagreement and dispute every bullet-point because it does not represent that whole truth, for instance:

   - June 27 and
   - July 3

   On these two dates, 6/27 and 7/3—I did not miss the deadlines, from your own words: I completed the assignments timely but had neglected to mark them completed. Also, I was out of the office for 5 weeks on FMLA-Medical. June 28 through August 5, 2018. I did not mark those assignments completed because it had been done, but the attorney had not responded back to me—but it was the end of the day and I was gone and wasn't back until 5 weeks later. THEY SHOULD NOT HAVE BEEN LISTED UNDER MISSED DEADLINES.

- August 15 – Jeffrey Williams--This assignment was marked "In Progress" because my part was done, however, attempts to get the address of Miss Anitra Lee for a deposition has been held up until Plaintiff's attorney provides a forwarding address—which Phil Hiltner has been made aware—Phil has not given me any new directive on this matter. IT IS NOT A MISSED DEADLINE.

- August 16 – 12000 Cloverdale—This assignment was given to Linda Rucker (as a result of my 5 week absence); When I returned to the office on Monday, August 6, 2018, Phil inquired of me about the assignment, I found out Linda had handled it. I sent Linda an email and she did not respond to me. When Phil asked out its status, I told him Linda had the assignment and that she didn't respond to my email. Phil then told me via e-mail: DISREGARD and TAKE THIS DOCUMENT OFF THE SMARTSHEET. IT WAS NOT A MISSED DEADLINE—IT HAD BEEN GIVEN TO LINDA RUCKER—AND WAS OUT OF MY HANDS (Smartsheet should have reflected that).

- August 21 – I was out of the office on FMLA on this date and am not sure what the issue is—We need to discuss this.

- August 22 –Dana Luna – NOT A MISSED DEADLINE – The Discovery in this case was filed timely on August 23, 2018, not August 24, 2018 as Smartsheet indicates.

- August 23 – Cloria Farris – Schedule a Deposition of Plaintiff for September 20, 2018. I dispute the implication that this Deposition was not done in a timely manner and dispute the evidence/Dep Notice as it is presented. I stated to you, Renee, that the document which is in the file was not typed by me.

## CARELESS ERRORS

This paragraph states: "We discussed your lack of paying attention to detail in your assignments. Your response was that you use departmental templates. I advised that you are to make required adjustments whenever needed.
My Response to this "Careless Errors" segment of your Memorandum is this:

This has been taken totally out of context. When speaking of my response as to "departmental templates" I was addressing Michael Auten when he stressed to me

"my formatting". Everytime Michael Auten has given me an assignment, it has been Deposition Notice assignments. I usually get these assignments via an email from Michael Auten. Before I send the document out, I send it to Michael Auten via email with the draft deposition notice attached. I ask him to review it. He sends it back with either a correction or comment. Most often his comment is" check the formatting. In the past the formatting issue was: a line was extended past his name and he wanted it shortened. I changed it. I also advised him that I use the standard templates from City Law—which we are required to use because I was not sure what Michael meant by his formatting comments.

My comment on this is that once Michael ok my drafts via email, then, I finalize it and process the Notice. Thus, I do not see my method to get the assignments (Dep Notices) completed for Attorney Michael Auten as being "Careless Errors". I strongly dispute the implications and the accusations.

## ATTORNEYS' CONCERNS—[Renee, we did not discuss this segment—as you are aware]

- You have not been putting dates on your attorneys' calendars:
### My Response

Which attorney are you referring to:
1. Philip Hiltner - Was the only attorney that had required I put dates on his calendar. When I returned on Monday, August 6, 2018—I sent Phil an email asking about putting his dates on his calendar. He responded a few days later by email stating I did not need to put the dates on his calendar. If he has changed his mind, I wasn't told.
2. Pat Cunningham – Has never asked me or had me putting his dates on his calendar.
3. Krystal Crittendon – Has never asked me to put her dates on her calendar.
4. Michael Auten – Has never asked me to put his dates on his calendar.

If the past procedures have changed—then I am not aware of it. I'd like to know which of my 4 attorneys would like me to put their dates on their calendar.

- Wrong dates on Notices –

    **My Response**. What Notice, when and by whom. This Notice and its error has not been brought to my attention. I'd like to see it. If I made an error, the error should be brought to my attention as quickly as it can be.

When that happens, I would endeavor to correct it. You say Notices. How many notices? Where are they? I have not seen the error(s). Please show them to me. Thank you.

"Failure to adequately carry out their instruction on assignments have caused the attorneys to cancel deposition."

**My Response:** What assignments for what attorney are you speaking of? What deposition for what attorney was canceled because of an error I made? When did this happen? When was I notified of this error and its affect. When did the attorney speak to me about my error? When did you Renee speak to me about this error?

- Keeping documents at your desk for extended periods of time that have not been filed or scanned into City Law.

**My Response**

I would like to know what document and case you are referring to and what assignment. Please be more specific. Thank you. If it is the one I'm thinking of, 6625 Tireman, this did not have a time limit on it – I was not given a time limit—it has been put on the bottom—I have had other assignments that needed more immediate attention.

6625 Tireman – Is not completed. If I should have returned it –without completing the assignment, then I made that mistake.

Overall, I state from the start of the Performance Improvement Plan that I deemed this whole process to be fraudulent. I have renounced it because it was borne out of a lot of manipulation and intimidation. There has been an agenda that someone is trying to keep. I have stated my case with all those I need to state it with—it is on the record. Nonetheless, while here, I will comply and have been compliant with every directive given to me, whether I deem it fraudulent or not.

Respectfully,
Debra Guilbeaux
September 7, 2018

## MEMORANDUM

| | |
|---|---|
| **TO:** | Renee Draper, Phil Hiltner |
| **FROM:** | Debra Guilbeaux |
| **RE:** | September 7, 2018 Meeting |
| **SUBJECT:** | Cloria Farris file |
| Today's Date: | September 10, 2018 |

This Memorandum is to clarify what came out of our meeting on Friday, September 7, 2018 at 2:00 p.m.

I asked to meet with Phil Hiltner (my attorney) with you, Renee, because I was concerned about his demeanor toward me from the first part of the morning when he seemed agitated prior to going to Court on the Cloria Farris Motion for Summary Disposition that he (Phil) had filed. He had previously spoken to me about his Motion (MSD) on the previous Friday (August 31, 2018). On 8/31/18, Phil wanted me to make sure Judge Edward Ewell had a Judge's copy of his MSD filed on 7/25/18. At the time I put the copies of his Motion and another motion on this case in the Motion basket, I went into Phil's office and asked "had the praecipe and Notice of Hearing already been filed?" Do I need to do either? Phil responded: "No, this was done while you were off and has been taken care of."

So, imagine my surprise when Phil came over to my desk, appearing agitated, abruptly handing me a new Scheduling Order on this MSD, stating: "My MSD wasn't heard because it wasn't on the docket --the Praecipe wasn't done." Phil said it in a manner that caused me to think I had done something wrong. That I had messed up on this. He asked me then at that moment--to make sure a Praecipe was done for the new date. I responded, "ok."

I re-state all this in this Memorandum because the segment of your Memorandum presented to me on Friday, September 7, 2018, "**Attorneys' Concerns**" where you mentioned "Notices" with incorrect information, to that effect. So, in my effort to keep track of all the false accusations of "poor work performance", I want the record to note that Phil Hiltner acknowledged in this meeting of September 7, 2018 that it was not my error that caused his MSD not to be heard on Friday, September 7, 2018.

If we need to discuss this further, let's do so. There was some unfinished issues of the August 29, 2018 memorandum anyway.

Respectfully,

*Debra Guilbeaux*

Debra Guilbeaux



# EXHIBIT 15

TO:       Monique Stevens and DeAngelo Malcolm

FROM:     Debra Guilbeaux

RE:       Notices of Suspension and Corresponding Grievances, etc.

DATE:     June 17. 2019


Dear Monique and DeAngelo: Today, I went through my personnel file and searched for copies of Suspension Notices and Grievances that were either filed or not filed as a result of the suspension or disciplinary action. Some are older, but the point of listing them is to show whether they were ever resolved and/or also the very toxic nature of my relationship with City supervisory personnel over 15 year period.

| YEAR | REASON FOR SUSPENSION | DAYS OFF | GRIEVANCE/OUTCOME |
|---|---|---|---|
| 2004 | "Violation of published departmental policy regarding Printing e-mail and misuse of dept. resources & equipment" | One (1) | Denied |
| 2005 | "Poor Work Performance" No entry in receptionist desk log" | Three (3) | Denied |

I had 3 signed affidavits from employees: Myria Ross; Pal Brooks and Darlene Flowers and Zechariah Gross that this series of accusations was completely false and manipulated by Supervisory personnel. These people can be contacted now for veracity of charge.

| | | | |
|---|---|---|---|
| 05/24/10 | "Weapon in the Workplace" | 29 Days | Denied |
| 6/2010 | "Possession of a weapon in the workplace— | Discharge 264 work days | Won in Arb |

- Suspension resulted in Discharge
- Guilbeaux Discharge went to Arbitration:
- Grievance won Arbitration in August 2011

| | | | |
|---|---|---|---|
| 06/09/15 | "Away from Office without Authorization" | Three (3) | Denied |

City's supervisors would not respond to my or Steward's (Pal Brooks) request for time off and would not give an Alternative person to contact as a Proxy. Management denied Myria Ross access to my timesheets. If Imani Kenyatte was out of office when I requested time—no one would approve or my Requests were ignored. When we met for hearing; Neither Pat Luckett or C. Raimi would Indicate who the alternative supervisor/proxy supervisor was in Workbrain.

From my records – No Grievance was filed (even though I requested it) If it was—I don't Know what disposition was other than it was not resolved to my **satisfaction.**

| | | | |
|---|---|---|---|
| 10/03/16 | "Absent Without Leave" | 10-Days | Denied |

Same set of circumstances of previous charge where Supervisor Imani Kenyatte would not be in the Office or in this case as the other, allowed my requested to be timed out and would not approve it. Meeting was held with supervisors, yet, they (Luckett, Raimi, Kenyatte) continued to evade issue of Proxy person—even though I put the request in the Workbrain system timely and accurately.

From my records – No Grievance was filed (even though I requested it).   If a Grievance was filed, I did ot get notification of its outcome.                                                                    Denied

---

)
01/16/18      Poor Work Performance                              10 Days              Denied


Grievance was filed, Disposition not known as of (6/17/19) by me (DFG)

---

05/3018      The City's supervisors wrote me up for Poor Work Performance at the time when for an unexplicable reason, my computer was shut down for 2 and ½ days and it did not become up and running until the 3rd day of June 1, 2018.  Then on June 6, 2018, I was given an oral and written warning by Supevisor, Renee Draper, for Poor Work Performance and not meeting deadlines—even though I had to "catch up" due to computer issues—which I sent an email to each of my attorneys to indicate the entire sequence of events and circumstances.

No Grievance was filed and yet I was subsequently given and made to agree (with coercion by Patricia Luckett and June Adams) to the Performance Improvement Plan or be discharged at meeting on June 26, 2018.

---

10/18/18      "Dereliction of Duty"                              Three (3)            Denied
)
            False accusations and manipulative actions by supervisors/attorneys (DFG)

            If Grievance was filed – Disposition not known as of (6/17/19) by me (DFG)

---

04/30/2019      "Misrepresentation and/or falsification of time records      29 days      Pending

                Grievance filed – and pending (DFG)

---

5/30/2019      Notice of Discharge                                            Pending

            Grievance filed – and pending (DFG)

---

Please note that I have copies of all of these Notices of Suspension and the corroborating information as well as a copy of the Grievance, if it was filed and if I received a copy.


I will be sending you a copy of this in the Regular and Certified Mail for your records.

# EXHIBIT 16

Inter-department Memorandum

TO:          Monique Stevens, President, AFSCME Local Union 2799

FROM:        Debra Guilbeaux, Recording Secretary, AFSCME Local Union 2799

SUBJECT:     Personal Improvement Plan

DATE:        June 26, 2018

Dear Monique:  Per our phone conversation on June 25, 2018, wherein you asked me to write down and present to you exactly what it is I am asking for in relation to the Personal Improvement Plan (PIP) which I signed on June 19, 2018.

1.  I signed with the belief that all the items listed by Management were based in truth and facts.  If the Employer has not presented true and accurate statements, then I deem the document is fraudulent and not worthy;

2.  What is true is: On May 30, 2018 at about 9:45 a.m., my computer shut down completely;

3.  I made 8 or 9 attempts to get IT to come and repair or do whatever to get me running again to no avail;

4.  I called Pat Luckett and she stated they sometimes don't get to it for 24 hours;

5.  It took 2.5 days to get a new computer (whether it was necessary, it is not clear);

6.  During this 2.5 days, I asked Renee Draper, my immediate supervisor could I use any other computer at a desk that was empty—she wasn't sure or had not got permission to respond at first, then on day 2, she said I could go to the empty desk by Rochelle Taylor and use that computer.

7.  In this period, I spoke to my attorney, Philip Hiltner and told him at least 3 times that I didn't know when I would be up and running; but,

8.  He had also given some assignments to Renee Draper and I saw Imani Kenyatte doing some of Philip Hiltner's assignments from the Smartsheet;

9.  My point is Management; Renee Draper, Patricia Luckett and June Adams and all 4 of the attorneys I was assigned to were well aware of my computer issues;

10. Yet, when I was behind on my work and Renee was quite aware, she did not state specifically except maybe one time that my work has to get out;

11. We didn't have a meeting about the breakdown of the computer, nor did we go over the assignments together to see the status of where I was on each of them;

12. This would indicate that there was a grand scheme to get me in a position where I would be in discipline and not viable for any raise, but in a position that would threaten my job;

13. I had been going on the Internet for the past year or more and still completing my work; contrary to the information being told by Management;

14. At the time the computer broke down, there were just a few assignments left—but there were the ones which were past due which put me in the disciplinary situation I find myself in;

# EXHIBIT 17



# Center of
# Behavioral Therapy, Inc.

July 11, 2019

Re: Debra Guilbeaux

B.D: 01/05/1951

SS # XXX-XX- 7617

To: Ms. Lquita Evans


This is a letter to confirm that Ms. Guilbeaux continue to be involved in treatment on a monthly basis due to her anxiety and depression. At this time she continue to make progress and has been approve for FMLA that is to expire on 6/30/2019.


If more information is needed, please feel free to contact me at the listed number.


Sincerely

*Hollis M. Evans LMSW*

Hollis M. Evans LMSW

Treating Therapist

# EXHIBIT 18

The Law Department personnel I've mentioned and other attorneys continued on a what I consider was a campaign to intimidate, harass, manipulate events to cause me duress and pressure to quit and when I didn't they initiated events to entrap me leading up to my being suspended on April 29, 2019 and subsequently terminated/discharged by a Notice of Discharge dated May 30, 2019 sent to

8.   Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated better than you?

| A. Full Name | Race. sex. age. national origin, religion or disability | Title |
|---|---|---|
| Marcia Landrum | African-American, approx. 59-60 yrs of age | Legal Secretary |
| Description of Treatment She was given a preferred          while in my same position and classification | | |
| B. Full Name | Race,   age. national origin, religion or disability | J.Qb-Ti.tlg |
| Wayne Maycock | Male, African-American, 77 years of age | Legal Secretary |
| Description Of Treatment Wayne was harassed and treated unfairly like was and told me about events, but City kept him. | | |

Of the persons in the same or similar situation as you, who was treated worse than you?

| Full Name | Race. sex. age. national origin, religion or disability | Job Title |
|---|---|---|
| Margaret Wilson | Female African-American 69-70 years of age | Legal Secretary |
| Description of Treatment She was harassed; treated discriminatory and quit in September of October of 2018 | | |
| B. Full Name | Race. sex. age. national origin. religion or disability | Job Title |
| Tyrone Butler | Male, African-American, Age 70-71 | Claims Rep |
| Description of Treatnent Was booted out of job without warning and City put a younger woman in his position. | | |

Of the persons in the same or similar situation as you, who was treated the same as you?

| A. Full Name | Race. sex, age, national origin, religion or disability | J.Q.b.-T.i.tle |
|---|---|---|
| David Demps | Male, African-American, Age 64 or 65 | Attorney |
| Description Of Treatment He was made to retire abruptly after undue pressure from City's Supervisory Attorneys | | |
| B. Full Name | Race. sex. age. national origin, religion or disability | Job Title |
| Renita Johnson | Female, African-American, age 58-59, approx | Attorney |
| Description of Treatment She was pressured on the job to perform work out of her classification then City fired her. She won her case | | |

Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9.   Please check all that apply:          C]      Yes, I have a disability

☐      I do not have a disability now but I did have one

No disability but the organization treats me as if t am disabled



**EXHIBIT 19**



RICK SNYDER
GOVERNOR

STATE OF MICHIGAN
DEPARTMENT OF CIVIL RIGHTS
DETROIT

DR. AGUSTIN V. ARBULU
DIRECTOR

June 12, 2018

Ms. Debra Guilbeaux
19666 Caldwell Street
Detroit, MI 48234

Re: Freedom of Information Request # 488839

Dear Ms. Guilbeaux:

Enclosed is invoice # 255314 for costs associated with fulfilling your request for materials under the Freedom of Information Act.

Please pay by check or money order. No cash payments will be accepted by mail.

Please make checks or money orders payable to: **State of Michigan,** and mail or deliver your payment to:

Michigan Department of Civil Rights
Office Of Management Services - Accounting Dept.
Cadillac Place,  Suite 3 - 600
3054 West Grand Boulevard
Detroit, MI-48202

If you have any questions or if I can be of further assistance to you, please contact me.

Sincerely,

Candace A. Chivis
FOIA Coordinator
phone: 313-456-3819
fax:    313-456-3721
email:  ChivisC@michigan.gov

Enclosures

**Michigan Department Of Civil Rights**
**Administrative Services Bureau - Accounting Division**
**CADILLAC PLACE, SUITE 3-600**
**3054 WEST GRAND BOULEVARD**
**DETROIT MI 48202**

## INVOICE

Contact#   :   **488839**

Invoice#   :   **255314**

Invoice Date :   **06/12/2018**

Customer   :   **Debra  Guilbeaux**

| Description | Quantity | Rate | Total |
|---|---|---|---|
| FOIA Copying Charges | 124 | $.35  Per page | $43.40 |
| Mailing/Shipping | 1 | $4.80  Per package | $4.80 |

|  | **Invoice Total** | **$48.20** |
|---|---|---|

| Receipt Number | Date | Payment Type | Payment Type No | Receipt Amount |
|---|---|---|---|---|

**Receipt(s) Total**

| **Balance Due** |
|---|

Please pay by check or money order. No Cash payments will be accepted by mail.

Please make checks or money orders payable to: State of Michigan, and mail or deliver your payments to:

**Michigan Department of Civil Rights**
**Office Of Management Services - Accounting Dept.**
**Cadillac Place,  Suite 3 - 600**
**3054 West Grand Boulevard**
**Detroit, MI-48202**

# EXHIBIT 20

Case 5:19-cv-13728-JEL-APP   ECF No. 1, PageID.87   Filed 12/19/19   Page 87 of 121

×

**Warning**

JUser: :_load: Unable to load user with ID: 42

# Positive duty

The *Equal Opportunity Act 2010* introduces a positive duty requiring all organisations covered by the law – including government, business, employers and service providers – to take reasonable and proportionate measures to eliminate discrimination, sexual harassment and victimisation as far as possible.

The positive duty is aimed at making sure organisations prevent discrimination happening in the first place, rather than responding after a complaint has been made. It also makes good business sense to be proactive.

It is important that everyone in your organisation knows about the positive duty and understands their responsibilities. It will help you stop discrimination before it happens and will take us a step closer to creating equal opportunity for everyone in Victoria.

## Who does the positive duty apply to?

The positive duty applies to everyone who already has responsibilities under the Equal Opportunity Act. It could apply to you if you:

- are an employer
- provide accommodation, education, or goods and services
- are a club or sporting organisation.

## What do I need to do?

- Understand the law.
- Identify potential problems.
- Set out an action plan.
- Seek advice and help if I need it.

## Our role

An individual cannot pursue a complaint against an organisation for not meeting its positive duty. However, if the Commission becomes aware of a serious issue that relates to a group of people, we may decide to investigate the matter further.

Contact us for more information about the positive duty, to discuss your organisation's equal opportunity plans or to find out about other resources and training.



# EXHIBIT 21

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To      Debra F. Guilbeaux
        19666 Caldwell Street
        Detroit, MI 48234

From:   Detroit Field Office
        477 Michigan Avenue
        Room 865
        Detroit, MI 48226

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No | EEOC Representative | Telephone No. |
|---|---|---|
| 471-2019-03848 | Anthony Watts, Investigator | (313) 226-4087 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Michelle Eisele,
District Director

07.17.19
(Date Mailed)

Enclosures(s)

cc.     Portia Roberson
        Group Executive
        CITY OF DETROIT
        2 Woodward Ave. Suite 1240
        Detroit, MI 48226

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Debra F. Guilbeaux<br>19666 Caldwell Street<br>Detroit, MI 48234 | From: | Detroit Field Office<br>477 Michigan Avenue<br>Room 865<br>Detroit, MI 48226 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| 471-2018-03575 | Alexa K. Moore,<br>Investigator | (313) 226-4626 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Michelle Eisele,
District Director

08/14/2018
(Date Mailed)

Enclosures(s)

cc:
**Portia Roberson
Group Executive
CITY OF DETROIT - CIVIL RIGHTS ETHICS
DEPARTMENT
2 Woodward Ave. Suite 1420
Coleman A. Young Municipal Center
Detroit, MI 48226**

| | | |
|---|---|---|
| THIS NOTIFICATION IS ISSUED UNDER THE AUTHORITY OF ACTS 220 & 453, PA OF 1976 AS AMENDED | **STATE OF MICHIGAN**<br><br>**DEPARTMENT OF CIVIL RIGHTS** | LANSING ENFORCEMENT UNIT<br>110 WEST MICHIGAN AVENUE, SUITE 800<br>LANSING, MI, 48933 |

## NOTICE OF DISPOSITION AND ORDER OF DISMISSAL

EEOC #: M 23A-2017-00030C                                    MDCR #: 475177

| Claimant: | Respondent: |
|---|---|
| Debra Guilbeaux<br>19666 Caldwell Street<br>Detroit, MI 48234 | City of Detroit Human Resources<br>Department<br>2 Woodward Avenue<br>Suite 1240<br>Detroit, MI 48226 |

**REASON FOR DISMISSAL:**

This complaint alleges that the respondent discriminated against the claimant in violation of civil rights laws.

The investigation of this complaint included a review of all information obtained during the investigation. Based upon all the evidence in the file, e.g. any applicable statements of witnesses, analysis of comparatives and review of documents, the department determined that there is insufficient evidence to proceed.

It is therefore ordered that this complaint is dismissed.

| Date Dismissed : November 2, 2017 | Date Mailed :        **NOV 1 6 2017** |
|---|---|

/s/ Lori Vinson/Director, Civil Rights Operations

### RULES OF CIVIL RIGHTS COMMISSION AND DEPARTMENT RELATING TO RECONSIDERATION AND APPEAL

*Rule 7.(1) A claimant may request of the department a reconsideration of its refusal to issue a charge. The request shall be in writing, state specifically, the grounds upon which it is based, and be filed within 30 days after the date of mailing of the notice of disposition of which reconsideration is requested. It shall be filed at any office of the department by personal delivery or by mail.*

*(2) The department may authorize a hearing on the request for reconsideration at such time and place, and before such hearing commissioner or commissioners or hearing referee or referees as it or the director may determine, and notice thereof shall be given to all parties to the proceedings.*

*Rule 18. Any party claiming to be aggrieved by a final order of the commission or the department, including without limitation a refusal to issue a charge, may appeal to the circuit court of the State of Michigan having jurisdiction provided by law within 30 days of the date of service of an appealable order.*

**Note:** *To Secure a review by the U.S. Equal Employment Opportunity Commission of this dismissal, you must request a review in writing within 15 days of your receipt of this notice. Send your request to: EEOC Detroit District Office, 477 Michigan Ave., Suite 1540, Detroit, MI 48226.*

CR462-OD (Rev 12-14)                                                                                            Page 1 of 1



# EXHIBIT 22

**Debra Guilbeaux - Re: Exhausted FMLA & Second Request For Doctor's Note**

| | |
|---|---|
| **From:** | Debra Guilbeaux |
| **To:** | Adams, June |
| **Date:** | 3/26/2019 11:56 AM |
| **Subject:** | Re: Exhausted FMLA & Second Request For Doctor's Note |
| **Bc:** | Evans, LaQuita;  Franklin, shirley;  Stevens, Monique;  dgilbo5613@gmail... |
| **Attachments:** | Guilbeaux, Debra.vcf |

I will have to calculate the hours. At the time the FMLA paperwork was given to me, it was pre-calculated that I could use a maximum of 16 per week, which took me to June, 2019. I have not used any more than 16 hours in any week, sometimes less than 16 hours, thus, I don't see how I should be over the amount or the hours exhausted--which I will have to see. I did not get any previous notice from anyone that I had exhausted or was near to exhausting my time, since this is 2 1/2 months before June, 2019. I never went over 16 hours in any given week. Something is off-- It definitely needs clarification.

Debra Guilbeaux
Legal Secretary
Litigation Section/Blight
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
guilde@detroitmi.gov
(313) 237-0497
(313) 224-5505

> > > June Adams 3/26/2019 11:44 AM > > >
Debra, your notice indicated how many hours are available to you and you have exhausted the hours. So you did have notice. Please check the number of hours you have used since you were granted FMLA. You are able to use the available hours thru June 2019, however you have no more time left because of your usage. There is a limitation on the amount of FMLA time you have. It is your responsibility to keep up with the amount of time you us and what is available to you. Please check with LaQuita Evans on this matter, I believe she sent you a letter confirming this.

June Adams
Chief Administrative Corporation Counsel
CITY OF DETROIT LAW DEPARTMENT
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-0540
(313) 224-5505 (fax)

The information contained in this electronic message is privileged and/or confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of the communication is neither allowed nor intended. If you have received
this communication in error, please immediately notify us by reply email or telephone at the above number and return the original message to the sender. Thank you!

---

>>> Debra Guilbeaux 3/26/2019 11:38 AM >>>
June, I had no notice of any such exhaustion. I have paperwork that says my approved FMLA will be exhaused in June 2019. Human Resources also has this paperwork on file. How did it become exhausted and why?

Debra Guilbeaux
Legal Secretary
Litigation Section/Blight
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
guilde@detroitmi.gov
(313) 237-0497
(313) 224-5505

---

>>> June Adams 3/26/2019 10:19 AM >>>
Debra, it is my understanding that your eligibility for FMLA leave has exhausted for this leave year and you are no longer eligible to call in or leave early using FMLA designation. Therefore, your absence yesterday (Monday March 25th) will not be designated FMLA but a regular absence. Also, this is my second request for a doctor's note for your use of FMLA on March 15th, in which you left early for a doctor's appointment to get your teeth cleaned. Please provide the note this week.

Thank you

June Adams
Chief Administrative Corporation Counsel
CITY OF DETROIT LAW DEPARTMENT
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-0540
(313) 224-5505 (fax)

The information contained in this electronic message is privileged and/or confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of the communication is neither allowed nor intended. If you have received
this communication in error, please immediately notify us by reply email or telephone at the above number and return the original message to the sender. Thank you!

# EXHIBIT 23

# EMPLOYEE RIGHTS
## UNDER THE FAMILY AND MEDICAL LEAVE ACT

### THE UNITED STATES DEPARTMENT OF LABOR WAGE AND HOUR DIVISION

**LEAVE ENTITLEMENTS**

Eligible employees who work for a covered employer can take up to 12 weeks of unpaid, job-protected leave in a 12-month period for the following reasons:

- The birth of a child or placement of a child for adoption or foster care;
- To bond with a child (leave must be taken within 1 year of the child's birth or placement);
- To care for the employee's spouse, child, or parent who has a qualifying serious health condition;
- For the employee's own qualifying serious health condition that makes the employee unable to perform the employee's job;
- For qualifying exigencies related to the foreign deployment of a military member who is the employee's spouse, child, or parent.

An eligible employee who is a covered servicemember's spouse, child, parent, or next of kin may also take up to 26 weeks of FMLA leave in a single 12-month period to care for the servicemember with a serious injury or illness.

An employee does not need to use leave in one block. When it is medically necessary or otherwise permitted, employees may take leave intermittently or on a reduced schedule.

Employees may choose, or an employer may require, use of accrued paid leave while taking FMLA leave. If an employee substitutes accrued paid leave for FMLA leave, the employee must comply with the employer's normal paid leave policies.

**BENEFITS & PROTECTIONS**

While employees are on FMLA leave, employers must continue health insurance coverage as if the employees were not on leave.

Upon return from FMLA leave, most employees must be restored to the same job or one nearly identical to it with equivalent pay, benefits, and other employment terms and conditions.

An employer may not interfere with an individual's FMLA rights or retaliate against someone for using or trying to use FMLA leave, opposing any practice made unlawful by the FMLA, or being involved in any proceeding under or related to the FMLA.

**ELIGIBILITY REQUIREMENTS**

An employee who works for a covered employer must meet three criteria in order to be eligible for FMLA leave. The employee must:

- Have worked for the employer for at least 12 months;
- Have at least 1,250 hours of service in the 12 months before taking leave;* and
- Work at a location where the employer has at least 50 employees within 75 miles of the employee's worksite.

*Special "hours of service" requirements apply to airline flight crew employees.

**REQUESTING LEAVE**

Generally, employees must give 30-days' advance notice of the need for FMLA leave. If it is not possible to give 30 days' notice, an employee must notify the employer as soon as possible and, generally, follow the employer's usual procedures.

Employees do not have to share a medical diagnosis, but must provide enough information to the employer so it can determine if the leave qualifies for FMLA protection. Sufficient information could include informing an employer that the employee is or will be unable to perform his or her job functions, that a family member cannot perform daily activities, or that hospitalization or continuing medical treatment is necessary. Employees must inform the employer if the need for leave is for a reason for which FMLA leave was previously taken or certified.

Employers can require a certification or periodic recertification supporting the need for leave. If the employer determines that the certification is incomplete, it must provide a written notice indicating what additional information is required.

**EMPLOYER RESPONSIBILITIES**

Once an employer becomes aware that an employee's need for leave is for a reason that may qualify under the FMLA, the employer must notify the employee if he or she is eligible for FMLA leave and, if eligible, must also provide a notice of rights and responsibilities under the FMLA. If the employee is not eligible, the employer must provide a reason for ineligibility.

Employers must notify its employees if leave will be designated as FMLA leave, and if so, how much leave will be designated as FMLA leave.

**ENFORCEMENT**

Employees may file a complaint with the U.S. Department of Labor, Wage and Hour Division, or may bring a private lawsuit against an employer.

The FMLA does not affect any federal or state law prohibiting discrimination or supersede any state or local law or collective bargaining agreement that provides greater family or medical leave rights.



For additional information or to file a complaint:

## 1-866-4-USWAGE

(1-866-487-9243) TTY: 1-877-889-5627

## www.dol.gov/whd





U.S. Department of Labor | Wage and Hour Division

# EXHIBIT 24



**Human Resources**
EMPLOYEE SERVICES

June 22, 2018

Debra Guilbeaux
19666 Caldwell
Detroit, MI 48234

RE:     Approved <u>Intermittent –Personal</u> Medical Leave (FMLA)

DEPT:   Law

Dear    Ms. Guilbeaux:

Your request for Family Medical Leave to cover your health condition has been approved effective <u>**June 21, 2018 – June 21, 2019.**</u>  The health care provider has estimated the FMLA qualifying condition may cause you to be absent **8 times per month, 1-8 hours per episode.**  Usage must not exceed 12 weeks during **the one year period <u>June 21, 2018 – June 21, 2019.</u>**

You have requested to use the following leave time to cover your absence(s):

☒ Sick (Personal)  ☐ Vacation  ☐ Compensatory Time  ☐ Unpaid

Please be advised of the following when utilizing your FMLA Benefits:

- You will utilize all sick bank hours first, prior to utilizing other off time banks when calling to  report an absence related to your own personal illness
- You are still required to adhere to the department's call-in procedure when reporting your absence
- You must **declare** your absence as FMLA when calling your supervisor
- Your requested leave time will be counted against your 12 week FMLA allotment
- Your supervisor must be notified in advance of all scheduled medical appointments
- Your absence(s) not identified as FMLA related, will be charged to your attendance record
- You may be required to recertify every 30 days

**Continuous Only**
If your leave is continuous, you must provide this office with acceptable documentation prior to its expiration if you are unable to return to work. Failure to return to work or to request and be approved for an extension is considered absent without leave (AWOL). An AWOL status may result in your separation from City employment.

**Returning to Work**
If your situation involves hospitalization, restrictions, or absence of 30 or more days, you must contact your Employee Services Consultant, Ericka Browning at 313-224-3719 for return to work processing.

Sincerely,

*LaQuita Evans*

LaQuita Evans
Employee Consultant III

cc:        HR Manager            Department Liaison
           File                 Benefits
           Payroll



**EXHIBIT 25**

# City of Detroit
## Notice of Discharge Form

May 30, 2012

Discharge Issued by: _Laurence J. Garcia_   Dep. Corporation Counsel Election Commission

RIGHT TO PROTEST

# EXHIBIT 26

# MEMO

To: ⟨illegible⟩

From: Charity Dean, Director Civil Rights Inclusion and Opportunity;
Lawrence E. Garcia, Corporation Counsel

Re: Inappropriate Treatment of City Employees ⟨illegible⟩

Date: October 15, 2019



*Bullying* is the repeated use of force, coercion, or threat, to abuse, aggressive, dominate or intimidate with the intent to communicate a threat of physical harm ⟨illegible⟩ with knowledge that it will be viewed as such.

*Cyber-bullying* is posting a message or statement in a public media forum about ⟨illegible⟩ person with the intent to place him/her in fear of bodily harm or death and with ⟨illegible⟩ intent to communicate a threat or with knowledge that it will be viewed as such.

*Defamation* is a statement which tends to injure the reputation of its object and/or ⟨illegible⟩ expose its object to contempt, hatred or ridicule.

*Doxxing* is the use of a public media forum to identify private and/or sen⟨illegible⟩ information about a person in order to harm or castigate him/her.

*Stalking* is willfully and repeatedly harassing a person in a way that would c⟨illegible⟩ reasonable person to feel terrorized, frightened, intimidated, threatened, haras⟨illegible⟩ molested and in a way that actually causes that effect.

**The City of Detroit values all of its employees and will not tolerate anyone who** ⟨illegible⟩ **cyber-bully, defame, dox or stalk any City employee. See Exec Order 2014-1.** ⟨illegible⟩ or have received any communication that involves any of the activities defined abo⟨illegible⟩ disregard it and either destroy the communication or refer it to the appropriate au⟨illegible⟩

No devices issued by the City of Detroit (e.g. cell phones, emails accounts, fax m⟨illegible⟩ be used for any purpose that is not official City business, and the inappropriate ⟨illegible⟩ employees is never official City business, regardless of whether you initiate th⟨illegible⟩ simply pass it along electronically.

If you believe you have been targeted for any of the activities defined above ⟨illegible⟩ workplace complaint with the Department of Civil Rights Inclusion and Oppo⟨illegible⟩ appropriate, you may file a criminal complaint with the Detroit Police Depart⟨illegible⟩ questions about the rules regarding the inappropriate treatment of City emp⟨illegible⟩ authors of this memo.

# EXHIBIT 27



**Human Resources**
LABOR RELATIONS

CITY OF DETROIT

Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 332
Detroit, Michigan 48226

Phone 313-224-3860
Fax 313-224-0736
www.detroitmi.gov

Debra Guilbeaux
19666 Caldwell
Detroit, Michigan 48234
guilde@detroitmi.gov

**Sent by email and U.S. Mail**

April 22, 2019

Ms. Guilbeaux:

On Friday, March 15, 2019 at approximately 4:40p.m., without prior notice or approval, you advised your supervisor that you were taking FMLA leave for the remainder of the day. You left work about 45 minutes before the scheduled end time.

The Law Department subsequently learned that you left early allegedly to have your teeth cleaned at the office of Roy Rosen, DDS. Ms. Adams asked for a supporting doctor's note but you have not produced any such note.

You are well aware that your FMLA would not cover time off for teeth cleaning, so this was a clearly an abuse of your approved family medical leave. Moreover, the website for Dr. Rosen shows that his Friday office hours end at 1:00 p.m.

Before deciding on a course of action, I renew the request that you provide a note from Dr. Rosen stating that you had your teeth cleaned on Friday, March 15, 2019 after 5:00 p.m. Please provide the note within 3 business days of this communication. If you fail to timely provide the note the City will proceed on the assumption that you did not attend an appointment on Friday, March 15, 2019 with Dr. Rosen.

Sincerely,

Valerie A. Colbert-Osamuede, Esq.
Deputy Director Labor Relations Division
Human Resources Department

cc:  Laquita Evans, HR
     June Adams, Law Department
     Patricia Luckett, Law Department

# EXHIBIT 28

## Debra Guilbeaux - Legal Secretary Classification

**From:**   Debra Guilbeaux
**To:**   Patricia Luckett
**Subject:**   Legal Secretary Classification

Pat:  You stated several times in the past and reiterated it in the Wednesday, December 16, 2015 meeting with my Supervisor, Imani Kenyatte, and my Union President, Cherlyn Rupert, that the Law Department is not an "hostile environment" for me.   There are several reasons why I believe it is.  To my understanding a hostile work environment is one where the people/co-workers have a perceived disposition about a person (myself) based on the communication and rhetoric that has been circulated in which those that believe it, act out on their perceptions.  In my case, right after coming to CAYMC from 36th District Court, there was this issue of my being assigned to various litigation attorneys.

Every time I have been assigned to an attorney in Litigation, none of them would give me any litigation work. To me, there is  some reason for that.  Someone and something has caused these attorneys to think that I will not produce their work like a litigation secretary should.  This attitude has come from the likes of:

Calvert Bailey
Cherlyn SMith-WIllimas
Robyn Brooks
Patrick Cunningham
Eric Gaabo
Jerry Ashford
Mike Mueller

WHen Joann is off work, it appears the Litigation Attorneys have trepidation about giving their work to me.  This has been said where I've heard it straight out of their mouths or overheard it, like I did today. If an atmosphere has been created that people perceive me as not capable of doing their work--it was created by someone for a reason.  If I am not doing the work, then, why do I have tons of work product wherein I have produced whatever assignment has been given to me?  Outside of Stanley de Jongh, I've worked for Cheryl Smith-Williams, Calvert Bailey, Vie Serifovski and Ed Keelean.  If any of these attorneys said I did not produce their work in a satisfactory manner of any sort, it has never been brought to my attention--other than perhaps the "prioritizing of assignments."  Vie said that "Debra has done everything I've given to her."  Also the times when Joann gets behind --she has on a few occasions given me some of her work to complete--but not often.

I just heard one of the attorneys say that they have "trepidation and anxiety at the fact that Joann is  going to be off."  Why would they have that if I've been here over 10 years and am producing the work on a daily basis? I say it is because you all have created the impression that either I cannot do the work or don't do the work timely or am not experienced in litigation--while I've been completing every litigation assignment that i've been given. I've made lots of copies of the work I've done for Stanley; Vie; Ed; Calvert and Cheryl.  NOthing has ever come back to me as though I didn't do it correctly.  Other than typical typos.  I'm not only cabable; I'm accurate and fast in most of the work I do.  The record will prove that.  SO, what's the problem with these litigation attorneys not wanting me to do their work?  The reason I believe from what I've seen and heard is that someone has put a "bad mouth" out on me for years.  The "bad mouth" is a lie that has been believed and circulated for years.  THe truth is that many people know I am a fast and accurate secretary and am capable of doing anything and everything that has been given to me ever since I've been in the employment of the Law Department.

You want to tell me again that I am not in an "hostile environment?"

about:blank                                                                                                          12/16/2015

12/16/2015

Debra Guilbeaux
Legal Secretary
Litigation Section/Blight
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
guilde@detroitmi.gov
(313) 237-0497
(313) 224-5505

12/16/2015

July 27, 2016


To: Evaluation Committee

Ed Keelean's Evaluation of Debra Guilbeaux's Work Product


I am surprised to get mostly 2 and 3's in most categories of the Performance Review Elements section of my evaluation. This is unacceptable to me because I have not had any conversations about workload or work product from any of the attorneys I've worked for. I do not have a long lapse in returning assignments from any of the attorneys I've worked for.

1. Organization Support
2. Follow policies and procedures. I have not used City Law that much so, if this is the entire criterion for this evaluation, then, I understand.

Under completes tasks correctly and on time. It is very rare that I ever give a document back that is not correct or on time, especially from Ed Keelean. Almost everything I did for Ed was done correctly and timely because he rarely gave me back anything that needed re-doing. In this area of Organization and Support. The minimum I should have received was 3.

3. Job Knowledge

Competent in required job skills and knowledge. Would this mean am I I knowledgeable of how to type, edit, complete a task and return it for signature? I need an explanation on this because I know what to do and how to do in almost any and all the assignments I'm given. But, if the only thing this is judging me on **is putting or creating a document in City Law**, then, I can accept a 2 in competence. If I am incompetent in the area of Job Skills and Knowledge—it would indicate to me: I do not know how to create a document from start to finish; edit and proofread it; have it ready to go out, etc. AND THAT DOESN'T HAPPEN.

**For Ed to give me a 2 and Needs Improvement on things he rarely has to have me to do is over is unfair because the turn around on the assignments he gives me is very quick.**

**TEAMWORK, CUSTOMER SERVICE, COOPERATION**

**To give me a 3 in teamwork is so unfair. I am the most cooperative person I believe in the entire department. I rarely say no to doing anything for anyone. I do not get loud, refuse work, act belligerent, argue with anyone who asks me to do an assignment if and when their secretary is out—NEVER. I have beenhelpful and cooperative to any attorney or person who asks me to do anything within the confines of work productivity. If someone needed to get a true and accurate perception of this all they had to do is ask any of the attorneys who've asked me to do an assignment or task for them; i.e., Calvert Bailey, Vie Serifovski, Patrick Cunningham, Jim Noseda; none of the attorneys who've ever asked me to do anything for**

them, small or not can say I refused or didn't do it. That would indicate I am a team player and supporter of the whole. Someone is not being truthful in this category.
Stanley and others have asked me to do a lot of "last minute" tasks—I've never refused. Calvert, Vie, have asked me to do things when it was almost time for me to leave to go home—I've never refused. For anyone to indicate or state I do the minimum of anything asked of me is blatantly FALSE!

If I should get anything in the 4 category—it would be for Teamwork, Customer Service, Cooperation and Conflict Resolutions. I have met with persons who have been difficult (with union representation and without) to resolve issues that were of concern to both parties.

There have been a few people with hard personalities and in almost all cases I try to take it until I have to address the issue. There are quite a few people who deserve Needs Improvement—before I do—in this area.

In the area of encourages open communication—I am very open in communication; I speak first to people who don't speak—I smile and say good morning to person who may often not do it —that would indicate that I am encouraging and open to good communication.

A lot of this evaluation is not a true and accurate perception of who I am and what I do. There has been a overall bias about me for far too long and there are so many who refuse to allow me to overcome anything from the past. That is what I call a hostile work environment and it has gone on for 10 years and longer.

I feel that some persons have sought to keep me from going forward and this is such a travesty. I accept and admit things I need improvement in but to tell me my entire work performance hinges on whether I have created my documents in City Law is so wrong.

Dependability average---Meaning I don't deliver my work product accurately and on time? Some one is not being honest.



CITY OF DETROIT
Office of Talent Development and Performance Management
Human Resources

GENERAL and CLERICAL PERFORMANCE REVIEW
Law Department
CONFIDENTIAL

| Employee Name | _ZEBRA GUILBEAUX_ | | |
| Section (e.g. Litigation) | LITIGATION | Job Title | SECRETARY |

| For Period Ending: | 6 30 16 |
| Last Review Date: | |

| Supervisor Name | E V KEEVERN |
| Supervisor Title | SUPERVISOR ACC |

INSTRUCTIONS

This form is to be used in evaluating the performance of City of Detroit Law Department General and Clerical employees.



**Detroit**

CITY OF DETROIT
Law Department
GENERAL AND CLERICAL PERFORMANCE REVIEW
CONFIDENTIAL

## Performance Review Elements

The supervisor must provide a numerical ranking for the employee's performance and abilities with respect to each subject matter listed below, using the ratings scale listed below.

Ratings:

1 = Unsatisfactory
4 = Exceeds job expectations

2 = Needs improvement
5= Outstanding

3 = Meets job expectations
N/A= Not applicable

| 1.  Organization Support | Rating |
|---|---|
| Follows policies and procedures | 3 |
| Completes tasks correctly and on time | 2 |
| Supports departments goals and values | 3 |
| **Organization Support Average** | 2.67 |

| 2.  Job Knowledge | Rating |
|---|---|
| Competent in required job skills and knowledge | 2 |
| Exhibits ability to learn and apply new skills | 3 |
| Keeps abreast of current developments | 2 |
| Requires minimal supervision | 2 |
| Displays understanding of how job relates to others | 3 |
| Proofreads and edits correspondence and legal documents | 2 |
| Uses resources effectively | 2 |
| **Job Knowledge Average** | 2.29 |

| 3.  Teamwork | Rating |
|---|---|
| Balances team and individual responsibilities | 3 |
| Exhibits objectivity and openness to others' views. | 3 |
| Gives and welcomes feedback | 3 |
| Contributes to building a positive team spirit | 3 |
| Puts success of team above own interests | 3 |
| **Teamwork Average** | 3 |

| 4.  Customer Service | Rating |
|---|---|
| Displays courtesy and sensitivity | 3 |
| Effectively manages difficult or emotional situations | 3 |
| Meets commitments in a timely manner | 2 |
| Responds promptly to attorney's needs | 3 |
| Solicits attorney's feedback to improve work product | 3 |
| **Customer Service Average** | 2.8 |

Employee Name: _____

Page 2 of 6



**Detroit**

CITY OF DETROIT
Law Department
GENERAL AND CLERICAL PERFORMANCE REVIEW
CONFIDENTIAL

| 5.  Cooperation | Rating |
|---|---|
| Establishes and maintains effective relations | 3 |
| Exhibits tact and consideration | 3 |
| Displays positive outlook and support to co-workers | 3 |
| Works cooperatively in group situations | 3 |
| Works actively to resolve conflicts | 3 |
| **Cooperation Average** | 3 |

| 6.  Attendance & Punctuality | Rating |
|---|---|
| Schedules time off in advance | 3 |
| Begins work on time | 3 |
| Meets attendance and punctuality guidelines | 3 |
| Ensures work responsibilities are covered when absent | 2 |
| Arrives to meetings on time | 3 |
| **Attendance & Punctuality Average** | 2.8 |

| 7.  Dependability | Rating |
|---|---|
| Responds to requests for service and assistance | 3 |
| Follows instructions | 3 |
| Takes responsibility for own actions | 3 |
| Commits to doing the best job possible | 3 |
| Keeps commitments | 3 |
| **Dependability Average** | 3 |

| 8.  Conflict Resolution | Rating |
|---|---|
| Encourages open communication | 3 |
| Confronts difficult situations | 3 |
| Maintains objectivity | 3 |
| Keeps emotions under control | 3 |
| Uses negotiation skills to resolve conflicts | 3 |
| **Conflict Resolution Average** | 3 |

| 9.  Initiative | Rating |
|---|---|
| Undertakes self-development activities | 2 |
| Seeks increased responsibilities | 3 |
| Takes independent actions and calculated risks | 3 |
| Looks for and takes advantage of opportunities | 3 |
| Asks for help when needed | 3 |
| **Initiative Average** | 2.8 |

Employee Name: _____D6_____ Page 3 of 6



CITY OF DETROIT
Law Department
GENERAL AND CLERICAL PERFORMANCE REVIEW
CONFIDENTIAL

| 10. **Planning & Organization** | Rating |
|---|---|
| Prioritizes and plans work activities | 3 |
| Uses time efficiently | 2 |
| Integrates changes smoothly | 3 |
| Sets goals and objectives | 3 |
| Works in an organized manner | 3 |
| **Planning & Organization Average** | 2.8 |

| 11. **Judgment** | Rating |
|---|---|
| Makes timely decisions | 3 |
| Exhibits sound and accurate judgment | 3 |
| Supports and explains reasoning for decisions | 3 |
| Includes appropriate people in decision-making process | 3 |
| **Judgment Average** | 3 |

| 12. **Oral Communication** | Rating |
|---|---|
| Speaks clearly | 3 |
| Listens and gets clarification | 3 |
| Responds well to questions | 3 |
| Demonstrates presentation skills | 3 |
| Participates in meetings | 3 |
| **Oral Communication Average** | 3 |

| 13. **Written Communication** | Rating |
|---|---|
| Writes clearly | 3 |
| Edits work for spelling and grammar | 3 |
| Varies writing style to meet needs | 3 |
| Presents numerical data effectively | 3 |
| **Written Communication Average** | 3 |

Total Score _____

Average Total  37.16

OVERALL RATING  2.85

Employee Name: _____ ᗪ𝒷. , _____



**Detroit**

CITY OF DETROIT
Law Department
GENERAL AND CLERICAL PERFORMANCE REVIEW
CONFIDENTIAL

**Additional Supervisor Comments:**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

# Employee Development Section

**Plans for Improvement**: The supervisor and employee should discuss the results of the previous sections for all areas with an average score of needs improvement or below.

_____
_____
_____
_____
_____
_____
_____
_____
_____

**Future Goals**: The supervisor and employee should discuss department and job related requirements or goals.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Employee Name: _____



CITY OF DETROIT
Law Department
GENERAL AND CLERICAL PERFORMANCE REVIEW
CONFIDENTIAL

## Employee Feedback Section

**Employee Comments**: The employee may provide comments related to this review, development plan and future goals

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

## ACKNOWLEDGMENTS

I have reviewed and discussed this performance review with my supervisor. My signature does not imply or indicate agreement with the review and comments.

Date: _____

Employee Signature: _____

Date: _____

Supervisor Signature: _____

## FILING INSTRUCTIONS

Supervisors should make two copies of this review.  Send the original to the Office of Talent Development and Performance Management, Human Resources.  Give one copy to the employee and retain one copy for your records.

Date: _____

_____
Received by TDPM- HR Representative

Page 6 of 6

Employee Name: _____

# EXHIBIT 30

DURENE L. BROWN
CITY OF DETROIT
OFFICE OF THE OMBUDSMAN

COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 114
DETROIT, MICHIGAN 48226-3413
PHONE 313•224•6000 TTY:311
FAX 313•224•1911
WWW.DETROITMI.GOV

September 8, 2010

Ms. Debra Mayfield Guilbeaux
19187 Albany
Detroit, MI 48234

Dear Ms. Guilbeaux : -

## RE: COMPLAINT # 10-86613

Thank you for contacting the Office of the Ombudsman. We have processed your complaint and forwarded your concern to the appropriate department. For your information, a copy of your complaint is enclosed.

It can take up to 30 days to get a response from a department; response time is dependent on the nature of the complaint. If it takes a department longer than 60 days to respond, we will contact you again to determine whether or not your complaint has been resolved. We suggest that you hold onto the complaint number issued by the Office of the Ombudsman so that we can follow up, if necessary.

Remember that you can always contact us at (313) 224-6000. You can also stop by the first floor of the Coleman A. Young Municipal Center, or you can e-mail Ombudsman@ombud.ci.detroit.mi.us. We appreciate the opportunity to be of service to you.

Sincerely,

Anna Ferrante
Assistant Ombudsman

Attachment

*"Getting problems out of the way, so that progress can occur."*



## CITY OF DETROIT
## OMBUDSMAN

**Durene L. Brown, City Ombudsman**

---

**Complaint Number:** 10-86613

**Date Received:** September 8, 2010          **Received By:** Anna Ferrante

**Department:** HUMAN RESOURCES

**Complaint Location:** Human Resources                    **Zip Code:** 48226
**Between:** Benefits Division

**Complainant:** Ms. Debra Mayfield Guilbeaux
19187 Albany

Detroit, MI  48234
**Home Phone:** (313) 425-1735          **Work Phone:**
**Organization:**

**Complaint Description:**

The complainant states that she was suspended from The City of Detroit Law Department on May 24, 2010 and unjustly fired on July 5, 2010. According to the complainant she has earned vacation time: also owed 3 1/2 years back pay wages for salary wages unpaid. Also, stating that the city caught and agreed that they had underpaid her in March 2009. Complainant states that the city paid her approximately 5,500.00 in Oct, 2009, currently owing her a total of $21,080.00. Please investigate.

** Back wages according to the complainant
$15,000.00 Back wages
$    780.00 Vacation
$ 4,000.00 Annuity
$ 1,200.00 Sub pay from prior

**Please respond to complaint by October 8, 2010 on attached response sheet**

---

Room 114 Coleman A. Young Municipal Center, Two Woodward Avenue, Detroit MI  48226-3413  (313) 224-6000 fax: (313) 224-1911

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DEBRA MAYFIELD GUILBEAUX

**(b)** County of Residence of First Listed Plaintiff   WAYNE
*(EXCEPT IN U.S. PLAINTIFF CASES)*

26163

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Debra Mayfield Guilbeaux, IN PRO SE
P.O. BOX 34062
DETROIT, MI 48234(586) 265-3081

## DEFENDANTS

CITY OF DETROIT, a Michigan muncipal corporation;
JUNE ADAMS, individually and in her official capacity, et al.

County of Residence of First Listed Defendant   WAYNE
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

Case:5:19-cv-13728
Judge: Levy, Judith E.
MJ: Patti, Anthony P.
Filed: 12-19-2019 At 02:56 PM
CMP DEBRA MAYFIELD GUILBEAUX V CITY
OF DETROIT, ET AL (LG)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ■ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ■ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ■ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ■ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/ Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ■ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 1981; 42 U.S.C. Sec. 1983 and Equal Protection Clause of 14th Amendments to U.S. Constitution & Equal Opport. Act 2010

Brief description of cause:
Employee (D. Guilbeaux) civil rights violated over 15 yrs. by Employer City of Detroit, culminating in the 2nd termination of employment.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 450,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ■ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   December 18, 2019

SIGNATURE OF ATTORNEY OF RECORD
*Debra Fay Guilbeaux*

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                        ☑ No

If yes, give the following information:

Court: ~~U. S. District Court for the Eastern Dist. of Michigan~~

Case No.: _____

Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other          ☐ Yes
            court, including state court? (Companion cases are matters in which      ☑ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes : _____