UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA MAYFIELD GUILBEAUX,

                Plaintiff,

v.

CITY OF DETROIT, *et al.*,

                Defendants.

_____/

Case No. 5:19-cv-13728
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND (ECF No. 34) AND GRANT DEFENDANTS' MOTION TO DISMISS (ECF No. 19)

**I.     RECOMMENDATION**:  The Court should **GRANT** Defendants' motion to dismiss (ECF No. 19), and **GRANT IN PART** and **DENY IN PART** Plaintiff's motion for leave to amend (ECF No 34), resulting in dismissal of the entire case.[1]

**II.    REPORT**

    **A.    Background**

        **1.    Factual Background**

_____

[1] Although the Court's referral for all pretrial matters (ECF No. 5) allows for a ruling, rather than a report and recommendation, on non-dispositive matters like Plaintiff's motion for leave to amend (ECF No. 34), I believe it most prudent to issue a report and recommendation on both that motion and Defendants' motion to dismiss in light of the connection between the two (ECF No. 19).

Proceeding *in pro per*, Plaintiff Debra Mayfield Guilbeaux filed this lawsuit against Defendants the City of Detroit and the Office of the Mayor Mike Duggan[2] on December 19, 2019, asserting a number of employment discrimination claims related to her work as a legal secretary in the Defendant City's Law Department. (ECF No. 1.)  The Court granted Plaintiff's application to proceed without prepayment of fees on December 20, 2019 (ECF No. 4), and the case was referred to me for all pretrial matters that same day (ECF No. 5).

On February 3, 2020, Plaintiff filed a motion for leave to amend her complaint, attaching a proposed amended complaint which sought to add as Defendants City of Detroit Law Department employees Lawrence Garcia, June Adams, Charles Raimi, and Patricia Luckett (collectively the individual Defendants), and to make corrections, additions, and deletions.  (ECF No. 12.) The Court granted the motion pursuant to Fed. R. Civ. P. 15(a), as leave to file an amended pleading was not necessary at that juncture (ECF No. 13, PageID.280), and Plaintiff filed her first amended complaint (FAC) on February 25, 2020 (ECF No. 15).  I note that the FAC at ECF No. 15 appears identical to the proposed amended complaint Plaintiff attached to her motion for leave to amend (ECF No.

---

[2] The caption listed only two Defendants—the City of Detroit and the Office of Mayor Mike Duggan.  (ECF No. 1, PageID.1.)  However, Plaintiff identified four additional Defendants—June Adams, Patricia Luckett, Lawrence Garcia, and Mayor Mike Duggan—in the body of the complaint.  (ECF No. 1, PageID.2-3.)

12), except that the first five paragraphs are missing, likely due to clerical error, as ECF No. 15 begins at Paragraph 6 and skips Page 2 (*see* ECF No. 15).  Thus, the FAC at ECF No. 15 is the operative pleading in this case.  For purposes of this motion, I incorporate into the FAC the recitations of jurisdiction, venue, and the identification of the plaintiff and the City of Detroit as parties, which appear in Plaintiff's *proposed* FAC and are not being challenged here (ECF No. 12, PageID.144.)  On March 9, 2020, Plaintiff filed ECF No. 18, which includes six exhibits Plaintiff explained should be used to replace "unreadable" exhibits attached to her FAC.  (ECF No. 18, PageID.428.)  Defendants did not challenge this filing and refer to the exhibits in their instant motion to dismiss.  (ECF No. 19, PageID.486.)

The allegations in the FAC, in part, are as follows.  Plaintiff was hired as a legal secretary with Defendant City's Law Department in 2003, where she worked off and on until her termination in May 2019.  (ECF No. 15, PageID.286-297, ¶¶ 14-79.)  At times relevant to her claims, Defendants Raimi, Adams, Luckett, and Garcia held the following positions in the Law Department: deputy corporation counsel, administrative assistant and supervisor over clerical support staff, and corporation counsel.  (ECF No. 15, PageID.285, ¶¶ 6-9.)  According to Plaintiff, she was subjected to unwarranted suspensions and a hostile work environment, as evidenced by incidents including Defendant Adams's questioning of the amount of

3

copies she made and her use of Family Medical Leave Act (FMLA) leave

throughout her employment with Defendant City (ECF No. 15, PageID.286-310,

¶¶ 14-150), on the basis of her age and in retaliation for her related complaints and

grievances (ECF No. 15, PageID.289-309, ¶¶ 35-150), and ultimately terminated as

a result  on May 28, 2019 (ECF No. 15, PageID.297, ¶ 79).  Her termination

followed a 30-day suspension "with recommendation for termination by

Defendants Adams, Defendant Raimi and Defendant Luckett for reasons that

implied Plaintiff had falsified the Approved FMLA she had taken" on March 15,

2019.  (ECF No. 15, PageID.294-295, ¶¶ 62, 69.)  According to Plaintiff,

Defendant Adams repeatedly questioned Plaintiff regarding her whereabouts that

day.  (ECF No. 15, PageID.294-295, ¶¶ 63-68.)

On the basis of the above allegations, Plaintiff claims: (1) violations of 42

U.S.C. §§ 1981 and 1983 and the Age Discrimination in Employment Act

(ADEA), 29 U.S.C. §§ 621-634, for disparate treatment based on age and the

creation of a hostile work environment; (2) violations of 42 U.S.C. §§ 1981 and

1983 and the Elliot-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS

(M.C.L.) 37.2201, *et seq*., on the basis of age; (3) violations of the Equal

Protection Clause under 42 U.S.C. § 1983 based on her age and "her protected

constitutional rights to complain" (ECF No. 15, PageID.304, ¶ 124); (4) wrongful

discharge in violation of public policy and applicable law statutes; and (5)

4

intentional infliction of adverse stress and undue harassment.  (*See* ECF No. 15, PageID.289-310, ¶¶ 35-150.)

## 2. Instant Motions

On March 15, 2020, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that Plaintiff's FAC failed to state cognizable claims against them.  (ECF No. 19, PageID.471, 488.)  Specifically, Defendants assert that: (1) Defendant Mayor's Office is not a proper party to this suit; (2) the individual Defendants are entitled to dismissal of the claims made against them in their official capacity, because the claims are duplicative of those against Defendant City; (3) there is no individual liability under the ADEA; (4) the ADEA precludes age discrimination claims under 42 U.S.C. §§ 1981 and 1983 and, regardless, Plaintiff failed to plausibly state an Equal Protection claim; (5) "Plaintiff has failed to state any cognizable claim under 42 U.S.C. § 1983 against [Defendant] City because she has failed to plausibly allege that any official policy or custom of [Defendant] City caused a violation of her equal protection rights"; (6) "Plaintiff has failed to state a plausible claim for wrongful termination in violation of public policy because such a claim is subsumed into Plaintiff's [ELCRA] and ADEA claims"; (7) Defendants are entitled to dismissal of Plaintiff's state law tort claims because she failed to plead in avoidance of

governmental immunity; and (8) Plaintiff's claims are barred, in part, by the applicable statutes of limitations.  (ECF No. 19, PageID.452-454, 465, 472-488.)

The Court granted Plaintiff's initial request for an extension of time to respond to Defendants' motion to dismiss (ECF No. 28, PageID.529), but denied her second request, requiring her response on or before June 10, 2020, as previously ordered (ECF No. 32).  Nevertheless, Plaintiff filed her response to Defendants' motion to dismiss one day late, on June 11, 2020 (ECF No. 33), as well as a separate motion for leave to amend her complaint a second time, with the proposed second amended complaint attached (ECF No. 34).  In her response to Defendants' motion to dismiss, along with making some seemingly irrelevant and unresponsive arguments, Plaintiff explains that she is seeking leave to amend her complaint to remedy any insufficiencies by substituting Defendant "Office of the Mayor Mike Duggan" for "Mayor Mike Duggan," and by adding the phrase "an individual and a supervisory agent of the City of Detroit" after each individual Defendant named in the caption, and removing the phrase "in official capacity". (ECF No. 33, PageID.569.)[3]  Plaintiff's explanation for seeking to amend the FAC

---

[3] It should be noted that throughout the body of the FAC, Plaintiff refers to "Defendant Mayor Mike Duggan," despite her listing his Office as the Defendant in the caption.  For example, when listing the parties, she states, "Based on information and belief, Defendant **Mayor Mike Duggan**, an Individual is the Head official of all of the City of Detroit's Departments and their Administrative agencies (hereafter "**Defendant Mayor**") and resides within the Eastern District of Michigan."  (ECF No. 15, PageID.285, ¶ 10 (emphases in original).)

6

in the dispositive motion response is helpful, as she provides little to no explanation in the motion for leave to amend itself.  (*See* ECF No. 34, PageID.584-585.)  A thorough review of Plaintiff's proposed second amended complaint in comparison to her FAC reveals that she seeks to make those changes identified in her response to Defendants' motion to dismiss, and also remove her claim of age discrimination and a hostile work environment in violation of the ADEA under Count I.  (ECF No. 34, PageID.591.)

Defendants filed a reply brief in support of their motion to dismiss on June 17, 2020, arguing, in part, that Plaintiff's ADEA claims should be dismissed because, beyond the issue of individual liability, she failed to "set forth any factual allegations to support her conclusions of age discrimination or harassment" (ECF No. 36, PageID.640), and asserting that Plaintiff waived a number of arguments in opposition (ECF No. 36, PageID.639, 641).  Defendants also responded to Plaintiff's motion for leave to file a second amended complaint that same day, arguing that the Court should deny the motion for undue delay and prejudice, for failure to demonstrate a basis for amendment, and because the proposed amendments are futile.  (ECF No. 35, PageID.621, 623-635.)

## B.    Standards

### 1.    Motion to dismiss under Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). To make this determination, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained

8

therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented, nor may courts construct the plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations.'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.) (internal citations omitted).[4]

## 2. Amendment under Rule 15

Under Fed. R. Civ. P. 15(a), a party may amend its pleadings at this stage of the proceedings only after obtaining leave of court. The Rule provides that the court should freely give leave for a party to amend its pleading "when justice so

---

[4] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).")

requires." Fed. R. Civ. P. 15(a)(2).[5] "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)).

### C.   Discussion

#### 1.   Defendant Mayor's Office

In the caption of Plaintiff's FAC, she lists the Mayor's Office as a Defendant (ECF No. 15, PageID.284), but in the body where she identifies the parties to the lawsuit, she states, "Defendant **Mayor Mike Duggan**, an Individual is the Head official of all of the City of Detroit's Departments and their Administrative agencies (hereinafter '**Defendant Mayor**') . . ." (ECF No. 15, PageID.285, ¶ 10 (emphasis in original)).  Defendants argue in their motion to dismiss that Defendant Mayor's Office must be dismissed from the case because it is an agency of Defendant City and, thus, not the proper party in interest.  (ECF No. 19,

---

[5] Plaintiff inaccurately cites Fed. R. Civ. P. 15(a)(1)(B) as the basis of her motion for leave to amend (ECF No. 34, PageID.584-585), which allows one amendment of a pleading as a matter of course "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(B).  Not only has plaintiff already amended her pleading once as a matter of course, but she also did not file the instant motion for leave to amend within 21 days after service of Defendants' motion to dismiss.

PageID.473.)  In response, Plaintiff asserts that "Mayor Mike Duggan" is a proper party because she "went to his office to complain of the harassment by Law Department supervisory agents," and that she would correct any error in her forthcoming second amended complaint by substituting "the 'Office of Mayor Mike Duggan' [with] Mayor Mike Duggan, an individual and Chief Executive Officer of the City of Detroit[.]"  (ECF No. 34, PageID.586.)  For the reasons that follow, to the extent Plaintiff asserts claims against either the Mayor's Office or Mayor Duggan himself, those claims should be dismissed.

In *Haverstick Enterprises, Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994), the Sixth Circuit stated that "[a] suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest," reasoning that "[u]nder the law of Michigan, a municipal police department is a creature of the municipality."  The Eastern District of Michigan applied this same reasoning to dismiss the "Detroit Mayor's Office" from suit in *McCree v City of Detroit*, No. 10-14478, 2011 WL 3897957, at *2 (E.D. Mich. Aug. 10, 2011), *report and recommendation adopted*, No. 10-14478, 2011 WL 3897860 (E.D. Mich. Sept. 6, 2011).  Specifically, the Court stated: "[T]he 'Detroit Mayor's Office' is not a separate entity that is amendable to suit; rather, it, like the Police Department, is an agency of the City of Detroit, which is the real party in interest.  The Mayor's Office must therefore be dismissed." *Id*.  *See also Med.*

11

*Corp., Inc. v. City of Lima*, 128 F.Supp.2d 454, 458 (N.D. Ohio 2000) ("[P]laintiff cannot sue Mayor Berger in his official capacity because the City of Lima is the real party in interest.  The Supreme Court ruled in *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), that '[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than the name, to be treated as a suit against the entity.'") (citation omitted).  Since Plaintiff has named and asserted her claims against Defendant City, and Defendant City has responded to those claims, Defendant Mayor's Office is superfluous and should be dismissed.

Moreover, although Defendants do not make this specific argument in their motion to dismiss,[6] to the extent Plaintiff sues Mayor Duggan in her FAC, if at all, she fails to state any factual allegations against him, let alone factual allegations which "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (quotations and citation omitted).  She includes no factual allegations against Mayor Duggan himself in the "Background Facts" portion of her FAC, nor under Counts I-V, only referring to the "Mayor's Office" sparingly under Counts I-III (*see* ECF No. 15, PageID.293, 296, 300, ¶¶ 57, 74, 101.)  Accordingly, to the

---

[6] Instead, Defendants assert in their motion to dismiss: "Plaintiff's complaint contains absolutely no factual allegations as to how any policy of the Mayor's Office caused a violation of her constitutional rights or how it participated in any discrimination or retaliation at all.  (ECF No. 15, PageID.293, 298, ¶¶ 57, 88).  On this basis, too, the Mayor's Office must be dismissed."  (ECF No. 19, PageID.474.)

12

extent Plaintiff names Mayor Duggan himself as a Defendant in her FAC, he should be dismissed.  *See Hanner v. City of Dearborn Heights*, 450 F. App'x 440, 446 (6th Cir. 2011) ("As for Hanner's claims against the Mayor in his individual capacity, the Mayor would only be subject to liability under § 1983 if Hanner alleged that the Mayor was personally involved in the deprivation of his rights. Hanner has alleged no such personal involvement on the Mayor's part.") (internal citation omitted).

### 2. The Court should dismiss Plaintiff's § 1981 claims in Counts I and II against all Defendants

Under Count I of the FAC, Plaintiff claims violations of 42 U.S.C. §§ 1981 and 1983 and the ADEA for "Disparate Treatment based on Age and Hostile Work Environment" (ECF No. 15, PageID.289).  And under Count II, she claims violations of 42 U.S.C. §§ 1981 and 1983 and the ELCRA on the basis of age. (ECF No. 15, PageID.297.)  The Court should dismiss Plaintiff's § 1981 claims against all Defendants.

Under 42 U.S.C. § 1981(a), "[a]l persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  Although Defendants

13

argue only that Plaintiff's § 1981 claim should be dismissed because it is precluded by her ADEA claim (ECF No. 19, PageID.477), she fails to respond to that argument (see ECF No. 33), and the law is clear that "though Section 1981 does not use the word 'race,' . . . it prohibits only racial discrimination . . . ." *El-Zabet v. Nissan North America, Inc.*, 211 F. App'x 460, 462 (6th Cir. 2006) (citing *Saint Francis Coll. v. Al-Zhazraji*, 481 U.S. 604, 613 (1987)); *see also Ana Leon T. v. Fed. Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir. 1987) ("It is well-settled that § 1981 redresses only racial discrimination . . . ."). As the FAC contains no allegations of racial discrimination or retaliation for complaints of discrimination based on race (see ECF No. 15), the Court should dismiss Plaintiff's § 1981 claims.

### 3.   Plaintiff's state law public policy and tort claims

### a. Public policy claim and exclusive remedy

In Count IV of the FAC, Plaintiff claims that her "termination violate[d] clearly established public policy of the State of Michigan that an employer may not discharge an employee where the alleged reason for the discharge of the employee is for misconduct that did not 'evince such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee . . . [.]'" (ECF No. 15, PageID. 306-307, ¶¶ 138-139) (citing *Carter v. Mich. Employment*

*Security Comm.*, 364 Mich. 538, 111 N.W.2d 817 (1961), which dealt with the issue of how "misconduct" is defined *for purposes of disqualifying an employee from unemployment compensation benefits*, as well as Wisconsin case law cited therein).  Elaborating on the basis for her claim, she alleges that "[a]t the time of the infraction that caused [her] termination, [she] felt intimidated by Defendant Adams only in that moment because [she] determined by Defendant Adams actions, [she] could be fired that day, when in actuality, [she] did not have to tell Defendant Adams her whereabouts under the terms of the Approved FMLA, according to her therapist, Dr. Evans."  (ECF No. 15, PageID.308, ¶ 142.)  In her response to Defendants' motion to dismiss, Plaintiff explains:

> [I] was fired by Defendant City allegedly for misrepresentation of the Approved Intermittent FMLA guidelines.  Defendant City said because I did not readily tell Ms. Adams the truth about where I went when I asked to leave the office 45 minutes early on the day of March 15, 2019, I had falsified my FMLA.  That was not so; it was only after being repeatedly queried by Ms. Adams for about two weeks—I lied and said I was at the dentist office.

(ECF No. 33, PageID.579.)

Defendants argue that they are entitled to dismissal of Plaintiff's claim for wrongful termination in violation of public policy because it is precluded by her ADEA and ELCRA claims (ECF No. 19, PageID.453, 480-81), an argument to which Plaintiff appears to provide no direct response (*see* ECF No. 33).  For the

reasons that follow, the Court should dismiss Plaintiff's public policy claim

because ELCRA is the exclusive remedy for her retaliation claims.

Under Michigan law:

> In general, in the absence of a contractual basis for holding
> otherwise, either party to an employment contract for an indefinite
> term may terminate it at any time for any, or no, reason.  See
> generally *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408
> Mich. 579, 292 N.W.2d 880 (1980).  However, an exception has been
> recognized to that rule, based on the principle that some grounds for
> discharging an employee are so contrary to public policy as to be
> actionable.

*Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 694-95, 316 N.W.2d 710

(1982).  However, "in Michigan, '[a] public policy claim is sustainable . . . only

where there also is not an applicable statutory prohibition against discharge in

retaliation for the conduct at issue.'"  *Briggs v. Univ. of Detroit-Mercy*, 22

F.Supp.3d 798, 807 (E.D. Mich. 2014) (quoting *Dudewicz v. Norris-Schmid, Inc.*,

443 Mich. 68, 503 N.W.2d 645, 650 (1993), *disapproved on other grounds*, *Brown

v. Mayor of Detroit*, 478 Mich. 589, 734 N.W.2d 514 (2007).  Accordingly,

"[w]here a statute prohibits the conduct at issue, 'Michigan courts have

consistently denied a public policy claim.'"  *Briggs*, 22 F.Supp.3d at 807 (quoting

*Dudewicz*, 443 Mich. at 79).

Though she never explicitly addresses age in Count IV of the FAC,

Plaintiff's public policy claim appears to be based on allegations of retaliation for

her complaints of age discrimination.  Specifically, she states:

16

> Plaintiff's compliance with Defendant City's Agents and supervisory personnel's treatment was rewarded with suspensions and the 2nd termination that was carried out, in part, *in retaliation* for Plaintiff's repeated filing of charges to Defendant City's in house and outside agencies for her internal objections to Defendant City's illegal practices, and for her attempts to comply with policies and regulations.

(ECF No. 15, PageID.306, ¶ 137) (emphasis added).  And in support of her four

other claims against Defendants, Plaintiff alleges that the actions taken against her

throughout her employment, for which she filed grievances, were based in part on

her age.[7]  (*See* ECF No. 15, PageID.289, 293, 297, 301, 303-304, ¶¶ 55, 82-83, 85,

108, 117-118, 121, 124.)  At least one of those grievances, which she has attached

to the FAC, specifically identify age as a reason for the discrimination claimed.

(*See* ECF No. 15, Exhibit 10.)

Under the ELCRA, an employer is barred from discharging or

discriminating against an individual based on age.  M.C.L. § 37.2202(1)(a).

Further, a person shall not "[r]etaliate or discriminate against a person because the

person has opposed a violation of this act, or because the person has made a

charge, filed a complaint, testified, assisted, or participated in an investigation,

proceeding, or hearing under this act."  M.C.L. § 37.2701(a).  The ELCRA

---

[7] Should the Court disagree with this assessment, as set forth below, Plaintiff's public policy claim against Defendant City should be dismissed for alternative reasons.  Further, to the extent this state law public policy claim remains against the individual Defendants, the Court should decline to consider it in ruling on Plaintiff's motion for leave to amend, as will be discussed more fully below.

imposes individual liability if the person who committed the discriminatory act was acting within his authority as the employer's agent. *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422, 697 N.W.2d 851, 859 (2005).

> "'Agents' are persons to whom the employing agency delegates supervisory power and authority over subordinates . . . An agent can be held directly and individually liable if he engaged in discriminatory behavior in violation of [ELCRA] while acting in his capacity as the victim's employer. *Elezovic v. Bennett*, 274 Mich. App. 1, 15, 731 N.W.2d 452 (2007).

*Sicuso v. Carrington Golf Club, LLC*, No. 17-13938, 2019 WL 296703, at *9 (E.D. Mich. Jan. 23, 2019). Thus, as the ELCRA prohibits both age discrimination in employment, M.C.L. § 37.2202(1), as well as retaliation for opposition to any violation of the act, M.C.L. § 37.2701(a), and may impose both individual and employer liability, the Court should dismiss Plaintiff's public policy claim against all Defendants. *See Sulieman v. St. John Hosp. & Med. Ctr.*, No. 2:07-cv-15426, 2009 WL 10680532, at *7 (E.D. Mich. June 26, 2009) ("The Michigan Supreme Court has found that claims of retaliation based on public policy are only permitted when there is no statutory prohibition against the retaliation. Under the [ELCRA] an employer is prohibited from retaliating or discriminating against a person who has opposed any violation of the act. Therefore, Plaintiff's exclusive remedy is to

bring a claim of retaliation under the applicable state statute, and his public policy claim is dismissed.") (internal citations omitted.)[8]

Moreover, for reasons described more fully below, Defendant City is also entitled to dismissal of Plaintiff's public policy claim on the basis of governmental immunity, as Defendants argue.  (ECF No. 19, PageID.481-482.)

### b. Tort claims

In Count V of the FAC, Plaintiff claims "Intentional Infliction of Adverse Stress and Undue Harassment."  (ECF No. 15, PageID.309-310, ¶¶ 145-150), stating "Defendant City's and its Agents and Supervisory personnel's conduct as outlined above was intentional and with wanton disregard to [her] feelings or the detrimental effect on [her] life."  (ECF No. 15, PageID.309, ¶ 146).  I have found no case law establishing undue harassment as a tort in the state of Michigan and, thus, the Court should dismiss this claim against each Defendant.  In contrast, "[a]lthough the Michigan Supreme Court has yet to recognize [an intentional infliction of emotional distress] cause of action, 'the Michigan Court of Appeals has recognized such a tort, and the [Sixth Circuit has] assumed that the Michigan Supreme Court would do so too under appropriate circumstances.'" *Mattis v.*

---

[8] Applying this same reasoning, Plaintiff's public policy claim is likely also precluded by the ADEA, which prohibits retaliation for opposing any practice made unlawful under the statute, 29 U.S.C. § 623(d), including age discrimination, 29 U.S.C. § 623(a)-(c).  However, the Court need not decide this issue because, as provided above, the ELCRA precludes Plaintiff's public policy claim.

*Massman*, 355 F.3d 902, 907-08 (6th Cir. 2004) (quoting *Andrews v. Prudential Secs., Inc.*, 160 F.3d 304, 309 (6th Cir. 1998)).  And in Michigan, a public policy claim for wrongful discharge sounds in tort.  *See Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 203-04 (6th Cir. 2004) (acknowledging the Michigan Supreme Court's holding that a plaintiff prevailing on a wrongful discharge in violation of public policy claim is entitled to tort-based remedies); *see also O'Connor v. Redford Twp.*, No. 09-10792, 2009 WL 2488095, at *5 (E.D. Mich. Aug. 13, 2009) ("It is . . . well established that a wrongful discharge claim in violation of public policy sounds in tort.") (citing *Phillips v. Butterball Farms, Inc.*, 448 Mich. 239, 245-46, 531 N.W.2d 144 (1995)).

Under Michigan's Governmental Tort Liability Act (GTLA), M.C.L. § 691.1401 *et seq.*, a governmental agency is immune from tort liability if engaged in the exercise or discharge of a governmental function "unless the plaintiff establishes the existence of a statutorily created exception to that immunity." *Odom v. Wayne Cty.*, 482 Mich. 459, 477-78, 760 N.W.2d 217 (2008) (citing M.C.L. § 691.1407(1)).  The exceptions include: "the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3)."  *Odom*, 482 Mich. at 478

20

n.62.  In other words, "a governmental body is immune from suit unless 'a plaintiff

pleads in avoidance of governmental immunity by stating a claim that fits within a

statutory exception,' or pleads that the governmental body was not engaged in a

governmental function when it caused the injury."  *Peterson v. Heymes*, 931 F.3d

546, 557-58 (6th Cir. 2019) (citing *Mack v. City of Detroit*, 467 Mich. 186, 649

N.W.2d 47, 55-57 (2002)).[9]

Plaintiff failed to do so here, as she neither alleged a statutory exception to

governmental immunity, nor that Defendant City's alleged torts arose from the

exercise of a non-governmental function.  Indeed, courts have long held that the

hiring, supervision, and discipline of a government employee is the exercise of a

governmental function.  *O'Connor*, 2009 WL 2488095, at *5 (citing *Galli v.

Kirkeby*, 398 Mich. 527, 537; 248 N.W.2d 149 (1976)).  Accordingly, on the basis

---

[9] Further:

> The GTLA does not contain an "intentional tort exception to
> governmental immunity" from tort liability.  *Harrison v. Corrections
> Dep't Director*, 194 Mich. App. 446, 450, 487 N.W.2d 799 (1992).
> Accordingly, any plaintiff who seeks to assert an intentional tort claim
> against a governmental defendant must demonstrate that the defendant
> committed the alleged tort outside the exercise or discharge of a
> governmental function.

*Genesee Cty. Drain Comm'r v. Genesee Cty.*, 309 Mich. App. 317, 328, 869
N.W.2d 635 (2015).  "In other words, if a governmental agency commits an
intentional tort during the exercise or discharge of a governmental function, the
governmental agency is immune from tort liability." *Id.*

of governmental immunity alone, the Court should dismiss Plaintiff's intentional

infliction of emotional distress claim against Defendant City.[10]  Additionally, the

individual Defendants likewise argue that they are entitled to dismissal on the basis

of governmental immunity, but the Court need not reach that issue, for the reasons

stated below.

Independent of any governmental immunity which would apply, the Court

should dismiss Plaintiff's intentional infliction of emotional distress claim against

all Defendants for failure to state a claim upon which relief may be granted.  *Iqbal*,

556 U.S. at 678.  "Under Michigan law, the elements of a claim of intentional

infliction of emotional distress are (1) extreme or outrageous conduct, (2) intent or

recklessness, (3) causation, and (4) severe emotional distress."  *Webster v. UAW,*

*Local 51*, 394 F.3d 436, 442 (6th Cir. 2005).  "Extreme or outrageous conduct is

that which goes beyond the bounds of decency and would be considered atrocious

and utterly intolerable in civilized society."  *Id*. at 443.  Liability does not,

however, extend "'to mere insults, indignities, threats, annoyances, petty

oppressions, or other trivialities.'"  *Lucas v Awaad*, 299 Mich. App. 345, 359, 830

N.W.2d 141 (2013) (quoting *Doe v Mills*, 212 Mich. App. 73, 91, 536 N.W.2d 824

---

[10] The same is true of Plaintiff's public policy claim, as it sounds in tort, but as
described above, that claim should also be dismissed because it is precluded by the
ELCRA.

(1995)).  Indeed, the level of proof needed to establish the "extreme or outrageous" conduct" necessary to prevail on an IIED claim under Michigan law can be formidable.  *See, e.g., Warren v. June's Mobile Home Village & Sales, Inc.,* 66 Mich. App. 386, 239 N.W.2d 380, 382-383 (1976) (finding the "extreme or outrageous conduct" element of an IIED claim lacking where a defendant landlord was alleged to have repeatedly called, screamed at and berated his tenants, including one episode in which he got them out of bed on a Sunday morning and screamed at them, went to their neighbors and told them that one plaintiff was a troublemaker and a "bitch," refused to let a prospective buyer of the plaintiffs' mobile home be a tenant on the defendant's mobile home site, thereby scuttling the sale, and caused them to have to abandon their mobile home because improvements thereto made it immovable).

Looking to the allegations in Plaintiff's FAC as well as the documents attached in support, she fails to allege facts that, even accepted as true, demonstrate conduct so extreme or outrageous as to state a plausible claim for intentional infliction of emotional distress.  Plaintiff alleges, generally, that Defendants subjected her to harassment, a hostile work environment, repeated unfounded suspensions, disparate treatment in comparison to her coworkers, and termination, for which she filed numerous grievances and EEOC complaints, on the basis of her age and in retaliation for such grievances.  (*See, generally*, ECF No. 15.)  And as

evidence of this claimed discriminatory treatment, beyond describing and attaching documentation of her suspensions and complaints, Plaintiff alleges that: Defendants Adams and Luckett required her to sign a "Performance Improvement Plan" despite performing her job well (ECF No. 15, PageID.291, ¶¶ 46-47); Defendant Adams attempted to humiliate her by repeatedly questioning the amount of copies she made and stored under her desk (ECF No. 15, PageID.290, ¶¶ 39-41, 51); Defendant Adams questioned her whereabouts when she had taken approved FMLA leave (ECF No. 15, PageID.293-295, ¶¶ 53, 63-69); and, "Defendant Adams, Luckett, Raimi and Garcia took adverse action against [her] by repeated suspensions (unpaid), depriving [her] of any overtime as [her] co-workers, cutting her pay, [and] not providing [her] with any of the same 'perks' as her co-workers . . . ."  (ECF No. 15, PageID.299, ¶ 91).

However, despite Plaintiff's conclusory claims that this alleged conduct "was extreme, outrageous, and beyond all possible bounds of decency" and "was not for any proper purpose other than to cause [her] severe and serious emotional distress" (ECF No. 15, PageID.309, ¶¶ 147-148), this Court has repeatedly, albeit in unpublished decisions, dismissed intentional infliction of emotional distress claims based on similar allegations.  *See Mensah v. Mich. Dept. of Corrections*, No. 10-CV-13233, 2011 WL 4027384, at *8 (E.D. Mich. July 15, 2011), *report and recommendation adopted as modified*, No. 10-13233, 2011 WL 4027307

24

(dismissing intentional infliction of emotional distress claim because allegations of

employment discrimination on the basis of race and national origin were not

"sufficiently outrageous to sustain a claim of intentional infliction of emotional

distress"); *Ross v. Bachand*, No. 14-CV-14122, 2015 WL 4644912, at * 10 (E.D.

Mich. Aug. 5, 2015) (granting dismissal of the plaintiff's intentional infliction of

emotional distress claim in this employment discrimination action because the

plaintiff's allegations that the defendants were openly hostile to her during a

meeting, complained that her campus visibility was inadequate despite no job

requirement to that effect, and maliciously refused to place her on a committee did

not demonstrate conduct "so extreme in degree as to go beyond all possible bounds

of decency"); *Lemanski v. Rev Group, Inc.*, No. 19-11253, 2019 WL 5455416, at

*8-9 (E.D. Mich. Oct. 24, 2019) (dismissing the plaintiff's intentional infliction of

emotional distress claim in ADA employment discrimination action because the

conduct alleged—negative messages and performance critiques—could not sustain

such a claim, and stating that both "state and federal courts in Michigan have

repeatedly held as a matter of law that the termination of an individual's

employment is not sufficiently outrageous to state a cause of action for intentional

infliction of emotional distress" (quotations and citation omitted); *see also*

*Chambers v. City of Detroit*, 786 F.Supp.2d 1253, 1277 (E.D. Mich. 2011)

(granting motion for summary judgment on the plaintiff's intentional infliction of

emotional distress claim because "having one's pay reduced (even if cut significantly due to racial discrimination) is not sufficiently outrageous to sustain a claim for IIED").[11]

Thus, even accepting the allegations in Plaintiff's FAC as true, they do not demonstrate the outrageous conduct necessary to state a plausible claim for intentional infliction of emotional distress.

### 4.    Plaintiff's § 1983 claims

Plaintiff claims violations of 42 U.S.C. § 1983 in Counts I and II of her FAC, which also include her ADEA and ELCRA claims, respectively (ECF No. 15, PageID.289-304, ¶¶ 35-122), and an equal protection violation under 42 U.S.C. § 1983 in Count III (ECF No. 15, PageID.304-306, ¶¶ 123-133).  The Court should dismiss those claims against all Defendants, as follows.

### a.    Count II - § 1983 and the ELCRA

"'Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law.'"  *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014) (quoting *McKnight v. Rees*, 88 F.3d 417, 419 (6th

---

[11] *But see Williams v. Morgan Stanley & Co., Inc.*, No. 08-12435, 2009 WL 799162, at *8 (E.D. Mich. Mar. 24, 2009) (the plaintiff met the burden of stating a claim for intentional infliction of emotional distress "by providing examples of the discriminatory treatment she allegedly endured and by alleging that she suffered extreme emotional distress as a result").

Cir. 1996)). It does not, however, "permit individuals to sue state actors in the abstract; it requires them to connect alleged constitutional violations of the individuals' right to state conduct." *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 614 (6th Cir. 2018). Thus, § 1983 provides a vehicle for persons to sue state and municipal actors for violations of the Constitution and federal law, not state law. As such, to the extent Plaintiff attempts to use § 1983 as the vehicle to sue Defendants for claimed violations of the ELCRA, a state law, that effort is misguided.

### b.    § 1983 claims against the individual Defendants

In the caption of the FAC, Plaintiff states that she is suing Defendants Raimi, Garcia, Adams, and Luckett in their official capacities (ECF No. 15, PageID.284), although she makes no specific statement to that effect in the body of her complaint.[12] Nor does she specifically state in the body of the FAC that she is suing these individual Defendants in their individual capacities.

In their motion to dismiss, Defendants assert:

> Defendants Raimi, Garcia, Adams, and Luckett, as Corporation Counsel, Deputy Corporation Counsel, as administrative staff in the City of Detroit Law Department are officials of the City. (ECF No. 15, PageID.284-285). The City of Detroit clearly has received notice of this suit since it is also a named party. (ECF No. 15, PageID.284).

---

[12] This marks somewhat of a change from Plaintiff's original complaint, in which she specifically stated, in her prayer for relief, that she was seeking "judgment against Defendant City's agents and supervisory personnel in their official capacities." (ECF No. 1, PageID.28.)

> All claims brought against Defendants Raimi, Garcia, Adams, and
> Luckett in their "official capacity" are duplicative of the claims
> against the City of Detroit.  Thus, the claims against these individuals
> must be dismissed.

(ECF No. 19, PageID.475.)

"[Section] 1983 plaintiffs must clearly notify defendants of the potential for

individual liability and must clearly notify the court of its basis for jurisdiction."

*Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001).  Thus, generally,

"[w]hen a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, we

then look to the course of proceedings . . . ."  *Id*.  However, rather than argue that

her FAC sues the individual Defendants in their individual capacities, Plaintiff

states in her response to Defendants' motion to dismiss that she is correcting the

official capacity issue in her second amended complaint.  Specifically, she states:

"Plaintiff's response to Defendant's claim has been corrected in **Plaintiff's Second**

**Amended Complaint**.  Plaintiff changed the 'in official capacity' to 'an individual

and a supervisory agent of the City of Detroit,' for each Defendant."  (ECF No. 33,

PageID.569 (emphasis in original).)  As such, the Court should view Plaintiff's

FAC as suing the individual Defendants in their official capacities only.

For claims brought under 42 U.S.C. § 1983:

> [I]ndividuals sued in their official capacities stand in the shoes of the
> entity they represent.  *Kentucky v. Graham*, 473 U.S. 159, 165, 105
> S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citing *Monell v. New York City
> Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56
> L.Ed.2d 611 (1978) ("Official capacity suits . . . represent only

> another way of pleading an action against an entity of which an officer
> is an agent.")); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)
> ("A suit against an individual in his official capacity is the equivalent
> of a suit against the governmental entity.")  As long as the
> governmental entity receives notice and an opportunity to respond, an
> official-capacity suit "imposes liability on the entity that he
> represents."  *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S.Ct. 873,
> 83 L.Ed.2d 878 (1985)[.]

*Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003).

Accordingly, Plaintiff's claims under § 1983 against the individual

Defendants in their official capacities should be treated only as claims against

Defendant City.  *See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003)

("'[A] section 1983 action against a city official in his or her official capacity is

treated as an action against the City entity itself.'") (quoting *Barber v. City of*

*Salem*, 953 F.2d 232, 237 (6th Cir. 1992)).  And, even viewing the allegations in

the FAC in the light most favorable to Plaintiff, *Keys*, 684 F.3d at 608, the Court

should dismiss her § 1983 claims against Defendant City.

Again, Plaintiff claims violations of 42 U.S.C. § 1983 and the ADEA for

disparate treatment based on age and a hostile work environment in Count I, as

well as an equal protection violation based on age under 42 U.S.C. § 1983 in Count

III of her FAC.  (ECF No. 15, PageID.289-297, 304-306, ¶¶ 35-79, 123-133.)

Defendants argue that the ADEA precludes age discrimination claims under § 1983

since, that "Plaintiff has failed to state any cognizable claim under 42 U.S.C. §

1983 against the City because she has failed to plausibly allege that any official

policy or custom of the City caused a violation of her equal protection rights," and

that, regardless, Plaintiff fails to plausibly state an equal protection claim. (ECF

No. 19, PageID.453, 476-478.)

The Sixth Circuit, in an unpublished opinion, has directly addressed the

ADEA's preclusion of § 1983 actions alleging violations of the ADEA itself,

concluding that the plaintiff could not bring her ADEA claim under § 1983

because the "detailed statutory remedy created by the ADEA constitutes the

exclusive means for enforcement of the Act." *Janes v. Bardstown City Schools Bd.*

*of Educ.*, 97 F.3d 1452, 1996 WL 536794, at *4 (6th Cir. 1996). Thus, to the

extent Plaintiff attempts to use § 1983 as a vehicle to assert age discrimination in

violation of the ADEA, that effort is misguided and unnecessary.

As Defendants acknowledge, however, the Sixth Circuit has yet to directly

address the ADEA's preclusion of § 1983 equal protection claims on the basis of

age. Nevertheless, the majority of circuits which have, conclude that the ADEA

precludes § 1983 claims of age discrimination in violation of equal protection. *See*

*Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104, 107, 110 (3d Cir. 2014) (reasoning

that § 1983 claims are unavailable where Congress has precluded such claims

through other legislation, and stating "we join the majority of Courts of Appeals in

concluding that Congress intended the ADEA to be the exclusive remedy for

claims of age discrimination in employment") (citing *Tapia-Tapia v. Potter*, 322

F.3d 742 (1st Cir. 2003), *Migneault v. Peck*, 158 F.3d 1131 (10th Cir. 1998), *vacated on other grounds by Bd. of Regents of Univ. of N.M. v. Migneault*, 528 U.S. 1110, 120 S.Ct. 928, 145 L.Ed.2d 806 (2000), *Chennareddy v. Bowsher*, 935 F.2d 315 (D.C. Cir. 1991) and *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364 (4th Cir. 1989)); *see also LaFleur v. Tex. Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997) ("[B]ecause Congress has enacted a statutory provision to confront age discrimination in the work place via the ADEA, and based on this circuit's opinion that the ADEA is the sole remedy for persons who have been discriminated against based on their age, we are compelled to hold that where a plaintiff asserts a claim of age discrimination under § 1983 and where the facts alleged will not independently support a § 1983 claim, the plaintiff's age discrimination claim is preempted by the ADEA."); *but see Levin v. Madigan*, 692 F.3d 607, 617 (7th Cir. 2012) ("Although the ADEA enacts a comprehensive statutory scheme for enforcement of its own statutory rights, . . . we find that it does not preclude a § 1983 claim for constitutional rights.  While admittedly a close call, especially in light of the conflicting decisions from our sister circuits, we base our holding on the ADEA's lack of legislative history or statutory

language precluding constitutional claims, and the divergent rights and protections

afforded by the ADEA as compared to a § 1983 equal protection claim.").[13]

Because *Levin* appears to be an outlier, I believe it prudent for the Court to

follow the majority of circuits in holding that the ADEA precludes § 1983 claims

of age discrimination in the workplace in violation of equal protection. Should the

Court agree, it could dismiss Plaintiff's § 1983 equal protection claim on this basis

alone, and need not consider Defendants' additional arguments that Plaintiff fails

to plausibly allege that any official policy or custom of the City caused a violation

of her equal protection rights, or that Plaintiff otherwise fails to plausibly state an

equal protection claim. It also bears noting that to the degree Plaintiff alleges

retaliation in violation of her equal protection rights under § 1983, that claim fails

and should be dismissed. There is no right under the Equal Protection Clause to be

free from retaliation for complaints. *See Strouss v. Mich. Dep't of Corrections*, 75

F.Supp.2d 711, 733-34 (E.D. Mich. 1999).

### 5. Summary of recommendations regarding dismissal

---

[13] Looking to two decisions from district courts within the Sixth Circuit provides little further direction. In *Crawford v. Columbus State Community Coll.*, 196 F.Supp.3d 766, 781-82 (S.D. Ohio 2016), the court "opt[ed] to follow the Seventh Circuit in *Levin* holding that the ADEA does not preclude § 1983 actions alleging *constitutional* violations." However, in *Committe v. Zhu*, No. 1:17-CV-1534, 2017 WL 4512479, at *1-2 (N.D. Ohio Aug. 17, 2017), the court acknowledged the circuit split but denied reconsideration where the "Court made no clear error of law in finding the plaintiff's complaint, alleging age-discrimination in violation of the Equal Protection Clause under § 1983, precluded by the ADEA.").

In summary, when addressing Defendants' motion to dismiss Plaintiff's FAC (ECF No. 19), I recommend that the Court: (1) dismiss Defendant Mayor's Office from the lawsuit, as well as Mayor Duggan himself, to the extent Plaintiff names him as a Defendant; (2) dismiss Plaintiff's 42 U.S.C. § 1981 claims in Counts I and II against all Defendants; (3) dismiss Plaintiff's state law public policy and tort claims against all Defendants; (4) dismiss Plaintiff's 42 U.S.C. § 1983 claims under Counts I and II against all Defendants; and (5) dismiss Plaintiff's § 1983 equal protection claim under Count III against all Defendants.  I note that Defendants also made statute of limitations arguments (ECF No. 19, PageID.454, 484-488) that the Court need not consider should it agree with the above recommendations and my ruling regarding Plaintiff's motion for leave to amend.

### 6.    Plaintiff's ADEA and ELCRA claims

Plaintiff raises a claim of disparate treatment based on age and a hostile work environment under the ADEA in Count I, and an ELCRA claim based on age in Count II of her FAC.  (ECF No. 15, PageID.297-304, ¶¶ 80-122).  However, beyond discussing the statutes of limitations associated with both, and appearing to argue in their motion to dismiss that Plaintiff's complaint should be dismissed in its entirety (ECF No. 19, PageID.488), Defendants fail to fully address Plaintiff's ADEA or ELCRA claims in their motion to dismiss.  With regard to the ADEA,

for example, Defendants argue in their motion to dismiss that Plaintiff's ADEA claims with regard to the individual Defendants must be dismissed because the ADEA does not allow for individual liability (ECF No. 19, PageID.452-453, 476), but do not address Defendant City's liability under the ADEA until their reply (ECF No. 36, PageID.640).  And Defendants fail to address the substance of Plaintiff's ELCRA claim until their response to Plaintiff's motion for leave to amend.  (ECF No. 35, PageID.626-631.)  Nevertheless, as will be explained more fully below, should the Court agree with my recommendations on Defendants' motion to dismiss as well as Plaintiff's motion for leave to amend, it should decline to exercise jurisdiction over Plaintiff's remaining state law ELCRA claim, and dismiss this case.  Moreover, if the motion for leave to file a second amended complaint is partially granted, as I recommend below, there is no need for further scrutiny of Defendants' request to dismiss Plaintiff's ADEA claim.

### 7.     Plaintiff's motion for leave to amend (ECF No. 34)

Again, along with her response to Defendants' motion to dismiss, Plaintiff filed a motion for leave to amend her complaint a second time, in an effort to cure any insufficiencies in the FAC.  A thorough review of Plaintiff's proposed second amended complaint and comparison to her FAC reveal that she: (1) removes the statements in the caption indicating suit against the individual Defendants in their official capacities; (2) substitutes Defendant Mayor's Office for Defendant Mayor

Duggan; and (3) removes the ADEA claim from Count I, a fact which Defendants

appear to have missed.  (*See* Proposed Amended Complaint attached to ECF No.

34.).[14]

### a.    Undue delay and prejudice

Defendants argue first that the Court should deny leave to amend because

Plaintiff did not file the motion until three months after they filed their motion to

dismiss, and the "delay has been prejudicial to Defendants who await a ruling on

their motion to dismiss."  (ECF No. 35, PageID.623-624.)  For the reasons that

follow, I disagree.

---

[14] Under the "Jurisdiction and Venue" heading of the proposed second amended
complaint, Plaintiff does address the ADEA, stating, in part:

> This Court has jurisdiction over this action pursuant to the Age
> Discrimination in Employment Act of 1967 which prohibits
> employment discrimination against persons 40 years of age or older.
> The Older Workers Benefit Protection Act (Pub. L. 101-433)
> amended several sections of the ADEA.  (U.S. EEOC).  In addition,
> Section 115 of the Civil Rights Act of 1991 (P.L. 102-166) amended
> Section 7(e) of the ADEA (29 U.S.C. 626(e)) (U.S. EEOC, ADEA).

(ECF No. 34, PageID.587, ¶ 1.)  And she incorporates Paragraph 1 of the
complaint into Count I.  (ECF No. 15, PageID.591, ¶ 26.)  However, in the heading
for Count I, Plaintiff has removed reference to the statutory provisions of the
ADEA, claiming only violations of 42 U.S.C. §§ 1981 and 1983 for disparate
treatment based on age and a hostile work environment.  (*Compare* ECF No. 34,
PageID.591 with ECF No. 15, PageID.289.)  And the allegations listed under
Count I do not explicitly reference the ADEA or its statutory provisions, although
Plaintiff does refer to her EEOC charges (ECF No. 34, PageID.591-598, ¶¶ 35-79),
nor does Plaintiff add an ADEA claim elsewhere in the complaint.

"Delay alone will ordinarily not justify the denial of leave to amend; however, delay will at some point become 'undue,' 'placing an unwarranted burden on the court,' or 'prejudicial,' 'placing an unfair burden on the opposing party.'" *Comm. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 347 (6th Cir. 2007) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). However, the Court should find no such undue delay or prejudice here. Plaintiff filed her original complaint on December 19, 2019 (ECF No. 1), and the current operative pleading, the FAC, as a matter of course in February 2020 (ECF No. 15). Defendants' motion to dismiss serves as the responsive pleading to Plaintiff's FAC, and no scheduling order has been issued in the case. As such, I see no meaningful delay. Nor would any such delay, if it existed, be undue by placing an unwarranted burden on Defendants or the Court. Defendants fail to specify how, exactly, the timing of Plaintiff's motion is prejudicial, beyond the fact that their motion to dismiss is pending. And Plaintiff filed the motion for leave in response to Defendants' asserted insufficiencies of her FAC, which is hardly an uncommon practice. Thus, the Court should reject Defendants' argument that Plaintiff's motion for leave to amend should be denied on the basis of undue delay or prejudice.

### b.     Demonstrated basis for amendment

Defendants next argue that the Court should deny Plaintiff leave to amend her complaint because the motion itself does not state with particularity the grounds for amendment. (ECF No. 19, PageID.624.) Generally, a request for a court order must be made in a motion, and that motion must "state with particularity the grounds for seeking the order[.]" Fed. R. Civ. P. 7(b)(1)(B); *see also* Fed. R. Civ. P. 15(a); *Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006).

As described above, Plaintiff provides no explanation for seeking amendment in the motion for leave. (*See* ECF No. 34, PageID.584-584.) She does, however, explicitly provide such explanation in her response to Defendants' motion to dismiss, stating that she would seek leave to remedy any insufficiencies asserted by Defendants by substituting Defendant Mayor Duggan for Defendant Mayor's Office, and including the phrase "an individual and a supervisory agent of the City of Detroit" after each individual Defendant named in the caption, rather than the phrase "in official capacity." (ECF No. 33, PageID.569.) Further, unlike the Plaintiff in *Evans*, 434 F.3d at 853, Plaintiff here filed a separate motion for leave to amend and attached her proposed amended complaint. Accordingly, the Court has no difficulty ascertaining the grounds for amendment, nor should the defendants. This argument should be rejected as a basis for denying leave.

### c. Futility

Finally, Defendants argue that the Court should deny Plaintiff's motion for leave to amend because her proposed amendments would be futile.  (ECF No. 35, PageID.624-635.)  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 383-83 (6th Cir. 1993)).  "The test for futility . . . does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss."  *Rose*, 203 F.3d at 421.

Again, Plaintiff seeks to amend her complaint by: (1) substituting Defendant Mayor Duggan for Defendant Mayor's Office; (2) suing the individual Defendants in their individual rather than official capacities; and (3) removing her ADEA claim.[15]  For all of the reasons provided at great length above with regard to Defendants' motion to dismiss, the Court should find that allowing Plaintiff to amend her complaint to sue the individual Defendants in their individual capacities

---

[15] Plaintiff has also removed certain allegations from her "Background Facts" in the proposed second amended complaint (*compare* ECF No. 15, PageID.286-287, ¶¶ 17, 19-20, 23-27 with ECF No. 34, PageID.589-591), and added into the "Parties" section that Defendants Raimi and Adams operated in a supervisory capacity over clerical staff (ECF No. 34, PageID.588).

would be futile with respect to Plaintiff's 42 U.S.C. §§ 1981, 1983 and state law public policy and tort claims, as would allowing her to substitute Defendant Mayor Duggan for Defendant Mayor's Office, and **DENY** Plaintiff's motion for leave to amend on that basis.  Even making those amendments, Plaintiff's claims would not survive a motion a dismiss.  *See Hildebrand*, 757 F.3d at 109-110 (acknowledging that the ADEA does not provide for individual liability while § 1983 does but holding that "this distinction [is not] significant enough to demonstrate congressional intent to permit both claims").  But the Court should **GRANT** the motion with respect to removal of her ADEA claim, as she has explicitly removed that claim from Count I of her proposed second amended complaint, perhaps persuaded by the force of Defendants' statute of limitations argument in their motion to dismiss, as is her right.  *See Rogers*, 595 F.Supp.2d at 766 ("[C]ourts may not rewrite a complaint to include claims that were never presented, nor may courts construct the plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations.'") (internal citations omitted); *Frengler*, 482 F. App'x at 976-77 (holding that even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted'") (citation omitted).[16]

---

[16] Further, as Defendants assert in both their motion to dismiss (ECF No. 19, PageID.452-453, 476) and response to Plaintiff's motion for leave to amend (ECF No. 35, PageID.626), the ADEA does not provide for individual liability.  *Wathen v. General Elec. Co.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997).

In taking this approach, Plaintiff has essentially rendered unopposed Defendants' arguments for dismissal of the ADEA claims in the FAC.

With Plaintiff's state law ELCRA claim being the only remaining claim for the Court to address under either Defendants' motion to dismiss or Plaintiff's motion for leave to amend, the Court should then **DECLINE** to exercise supplemental jurisdiction over that claim and dismiss the case in its entirety. *See* 28 U.S.C. § 1367(a) and (c); *Grace v. USCAR*, 521 F.3d 655, 679-80 (6th Cir. 2008). Should the Court agree, it need not address Defendants' arguments regarding the futility of Plaintiff's ELCRA claim against the individual Defendants (See ECF No. 35, PageID.626-631), or Defendants' failure to address that claim in their motion to dismiss. [17]

### D.    Conclusion

The Court should **GRANT IN PART** and **DENY IN PART** Plaintiff's motion for leave to amend (ECF No. 34), permitting her only to drop her ADEA claim. The Court should **GRANT** Defendants' motion to dismiss and: (1) dismiss Defendant Mayor's Office from the lawsuit, as well as Mayor Duggan himself, to the extent Plaintiff names him as a Defendant; (2) dismiss Plaintiff's 42 U.S.C. § 1981 claims in Counts I and II against all Defendants; (3) dismiss Plaintiff's state

---

[17] Likewise, should the Court disagree with the analysis above regarding dismissal of Plaintiff's state law public policy claim, it should decline to exercise supplemental jurisdiction over that claim, as well.

law public policy and tort claims against all Defendants; (4) dismiss Plaintiff's 42

U.S.C. § 1983 claims under Counts I and II against all Defendants; and (5) dismiss

Plaintiff's § 1983 equal protection claim under Count III against all Defendants.

Finally, the Court should then **DECLINE** to exercise supplemental jurisdiction

over Plaintiff's ELCRA claim (and any other remaining state law claims), to be

dismissed without prejudice to refiling (them) it in state court, **DISMISSING** all

other claims with prejudice.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

**IT IS SO ORDERED.**

Dated: November 23, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE